## Case No. 13,159.

### SOHIER et al. v. WILLIAMS et al.

[1 Curt. 479.] [1]

Circuit Court, D. Rhode Island. Nov., 1853.

WILLS—TRUSTEE—SALE OF LANDS—SPECIFIC PERFORMANCE—PARTIES—DOUBTFUL TITLE.

1. Where a testatrix empowered a trustee to sell lands, for purposes of reinvestment, "when the major part of my children shall recommend and advise the same," it was held that the consent of the major part of those living at the time when the sale was made, was sufficient.

2. The tenant for life, together with the contingent remainder-man in fee may represent the inheritance in a bill for specific performance, though their interests are merely equitable, provided the issue of the remainder-man will take, if he fails to do so by reason of the contingency.

[Cited in McArthur v. Scott, 113 U. S. 399, 5 Sup. Ct. 672.]

[Cited in Clarke v. Cordis, 4 Allen. 476. Cited in brief in Regan v. West, 115 Ill. 605, 4 N. E. 365.]

3. A court of equity will not force on a purchaser a doubtful title; and a title may be doubtful, because it depends on a doubtful interpretation of a will, if all parties who may be interested in the estate are not bound by the decree.

[Cited in Chesman v. Cummings, 142 Mass. 68, 7 N. E. 13; Jeffries v. Jeffries, 117 Mass. 186.]

Bill for the specific performance of a contract for the sale of land in the city of Newport. The case was, that Mary Gibbs, being seised of the land in question and other lands, and possessed of personal property, on the nineteenth day of May, 1823, made a will, whereby, in respect to her lands, she devised as follows:

"I give and devise to my brother, Walter Channing, of Boston aforesaid, Esquire, all my dwelling-houses, farms, lands, and real estate, situate in the state of Rhode Island,

and also all my lands, dwelling-houses, and real estate of every description, situate in the commonwealth of Massachusetts or elsewhere, to have and to hold the said farms, lands, houses, and real estate, to him the said Walter, his heirs and assigns, upon the special trusts, following, and no other, to wit: that he and his assigns shall and do take or cause to be taken reasonable and proper care of said lands, dwelling houses and other real estate, and, at his discretion, maintain and preserve the buildings in repair, and make such improvements of the farms as he shall think necessary, or for the interest of my children, and shall and do take and receive the rents, issues and profits of said farms, dwelling-houses and other real estate during the lives of my said children, George, William C., Ruth, and Sarah, the survivors and survivor of them, and after deducting from the same all the expense of maintaining and preserving the buildings in repair, and making such improvements of the farms as he or they shall judge to be necessary, or for the interest of my said children, and the reasonable charges and expenses of executing this trust as respects the real estate, and a reasonable compensation to himself and themselves for his and their services therein, shall and do pay the rest and residue of all said rents, issues and profits semiannually to and among my said children equally during their joint lives; and if one or more of them should die before me, leaving issue, then to pay to such issue the parent's share or proportion thereof, and if without leaving issue, then to pay such deceased's child's share or proportion to and among my surviving children equally.

"And upon this further trust, that from and after the decease of any and each of my said children, after by decease, leaving issue, the said Walter, his heirs and assigns, shall and do pay to the issue of such child the whole of the share of rents, issues and profits, his or her parent, my child, would have been entitled to if living, during the lives of my surviving children, the survivors and survivor of them, equally to be divided among such issue; and if my child, so dying, shall leave no issue, then to pay the whole of such child's share of said rents, issues and profits to my surviving children, and the issue of such as shall have deceased, equally among them, according to the stocks, during the lives of my said children and the survivors and survivor of them, and upon and after the decease of the longest liver of my said children, then upon this further trust, and confidence that said Walter, his heirs and assigns, shall and do, by proper and legal deeds and instruments for the purpose, convey, assign and transfer to the children of my said children and the issue, (if any) of such grandchild or grandchildren as may have deceased, (the children of a deceased child or grandchild in all cases in this will to represent their parent,) all the aforesaid lands, dwelling-houses, and other real estate herein given in trust to said Walter.

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

and all his and their right, interest and estate therein, to be equally divided among them, according to the stocks; and I do hereby further expressly grant, devise and direct that all the aforesaid lands, dwelling-houses, and other real estate before mentioned, shall, from and after the decease of the longest liver of my said children be and remain to the sole use and behoof of the children of my deceased children, and the children of such of my said grandchildren, if any, as shall have deceased and their heirs in fee-simple for ever, in the shares and proportions aforesaid.

"Ninth, I give and bequeathe to my said brother, Walter Channing, all the residue and remainder of my personal estate of every description to have and to hold the same to him, his heirs, executors, administrators, and assigns upon these special trusts following and no others, to wit: that he and they shall and do invest the whole of said residue of my personal estate in stocks, or loan the same on mortgage or other good security, at the discretion of my said trustee, and keep the principal so invested or placed out at interest, or mortgage, or other good security, during the lives of my said children and the survivors and survivor of them, and during all that time shall and do collect and receive the dividends, interest and income accruing on said principal, and after deducting from the same the reasonable charges and expenses of executing the trust as respects the personal estate, and a reasonable compensation for the services of the trustee therein, shall and do pay the residue of said dividends, interests and income, semiannually, to and among my said children equally during their lives, and if one or more of them should die before me, leaving issue, then to pay to such issue the share their parent, my child, would have been entitled to, if living; and if without leaving issue, then to pay such deceased child or children's share equally to and among my surviving children and the issue of such as shall have deceased, equally, according to the stocks; and upon this further trust, that upon and after the decease of any or either of my said children, after my decease, leaving issue and a widow or widower, that the said Walter, his heirs, executors, administrators, or assigns, shall and do pay to such widower or widow ——— dollars per annum, as long as he or she shall remain single and unmarried, and no longer, and shall and do pay to the issue of such child, semiannually, the residue (after deducting said annuity) of the share of said dividends, interest, and income, that their parent, my child, would have been entitled to, and upon and after the decease or marriage of their surviving parent shall and do pay the whole thereof to the said issue of such deceased child during the lives of my surviving children, and the survivors and survivor of them; and if such child, so dying, shall leave issue, and his or her wife or husband, shall have deceased in the lifetime of such child, then that said Walter, his heirs, executors,

administrators, and assigns, shall and do pay to such issue, semiannually, equally among them the whole share of said dividends, interest, and income which such deceased child would have been entitled to, during the lives of my surviving children and the longest liver of them, and if such child so dying after me shall leave a widow or widower, and no issue, then that said Walter, his heirs, executors, administrators, or assigns, shall pay to such widow or widower, five hundred dollars per annum so long as he or she shall remain single and unmarried, but no longer, and the residue thereof, after deducting said annuity, shall pay to my surviving children, and the issue of such other or others as may have deceased, semiannually, and from and after the decease of such widow or widower, shall pay the whole of such share of said dividends, interest and income, semiannually, to and among my surviving children, and the issue of such as may have deceased, equally among them, according to the stocks, during the lives of my surviving children and the survivors and survivor of them; and if my child, so dying, shall leave neither issue, nor a widow or widower, then to pay the whole of said child's share of said dividends, interest and income to and among my surviving children, and the issue of such other child or children as may have deceased, equally among them according to the stocks, during the lives of my surviving children, and the survivors and survivor of them; and upon and after the death of my said children, and the longest liver of them, then upon this further trust and confidence, that said Walter, his heirs, executors, administrators, or assigns, and any trustees under this will, shall and do, by legal and proper deeds and instruments for the purpose, convey, assign, transfer, and deliver over to the children of my said children, and the issue, if any, of such grandchild or grandchildren, as may have deceased, equally among them, (the children of a deceased child or grandchild, in all cases in this will, to represent their parents,) all the stocks, mortgages, bonds, notes, and other securities for money, and all other personal estate, which he or they shall have received, taken and holden as trustee or trustees under this will, or which he or they shall have in his or their hands, except so much as may be necessary to pay the annuities aforesaid to a surviving husband or wife of one or more of my deceased children as hereinafter is provided; and it is my will, and I hereby direct that in case the husbands of my said daughters, or either of them, or the wives of my said sons, or either of them, should survive the longest liver of my said children, then the said Walter, his executors, and administrators, or any trustee under this will, shall retain out of the share, the issue of such daughter or son would have been entitled to, so much personal estate as will yield an income sufficient to pay the annuity herein given to the surviving parent of such issue,

and to hold the same and appropriate and apply the interest and income thereof to the payment of such annuity to such surviving parent, so long as he or she shall remain single and unmarried, and upon his or her death or marriage, whichever shall first happen, then to pay and transfer the personal estate so reserved, to the issue of such daughter or son, equally among them; provided, however, if such issue shall secure to their surviving parent, to his or her satisfaction, the payment of said annuity, then the said trustee shall pay to such issue the whole of their share of said personal estate.

"Tenth. I hereby authorize the said Walter, and any person who may hereafter become trustee under this will, upon the application of any of my children in writing, or of the guardians of the issue of such child as shall have deceased, to invest a portion of such child's, or issue of a child's share of my personal estate, not exceeding five thousand dollars, in the purchase of life annuities for the benefit of such child, or issue of any of them, and upon their lives, and the life of the husband or wife of such child, at the discretion of said trustee.

"Eleventh. And if my said brother, Walter, from any cause whatever, shall wish to be acquit and discharged from this trust, or if he shall be desirous of having some other person or persons joined and associated with him in this trust, I do hereby fully authorize and empower him to substitute and appoint in his stead and place, or as an associate trustee to act with him, as he shall think necessary or most expedient, any one or more persons, that he alone, or he and my executors, shall think fit and well qualified to execute said trust, and thereupon to convey, assign, and transfer the whole real and personal estate of every description, which he shall hold in trust under this will, to such person or persons, either to hold to him or them and their heirs, in his, said Walter's, place and stead, or to hold jointly and together with him, and in either case upon the same special trusts, and for the same uses, and subject to the same limitations as are expressed in this will, and as the said Walter held the same under and by virtue of this will; and further, in case my said children shall, in writing, request him, said Walter, or any trustee or trustees he may appoint, to relinquish the trust, then I hereby authorize and request him, and such other trustee and trustees to relinquish said trust accordingly, and I do in that case authorize and empower the judge of probate for the county where this will shall be proved, to appoint such trustee or trustees as he shall deem fit and suitable to execute said trust in his or their place or stead; and in case said trustees, or either of them, shall refuse to resign the trust upon such request by my said children, I hereby authorize and empower the judge of probate to remove him or them from the office of trustee, and to appoint other fit and suitable

persons in their stead. And I further authorize, direct and require the trustee and trustees under this will, who shall resign their trust at the request of my children, or be removed by the judge of probate, to assign and transfer to the person or persons who shall be appointed trustees by the judge of probate, all the estate, real and personal, which the trustee and trustees so resigning or removed then hold under this will, to be held to and by the new trustees, so appointed, and the survivor of them and his heirs, upon the trusts, and for the uses, and subject to the limitations expressed and contained in this will, and no other, and to prevent a failure of trustees to execute this will, I authorize and request the judge of probate for the county where it shall be proved, to appoint such trustee or trustees to execute the trusts herein contained and created, as the trustee herein named and my executors shall recommend, and on failure of such recommendation, such trustee as said judge shall deem fit and suitable.

"Twelfth. Reposing in my said brother, Walter, full and entire confidence, I do hereby expressly declare, that he is not to be responsibility for any loss whatever that may happen in the execution of this trust, unless it should happen through his own wilful default, and that the said Walter and the trustees he shall appoint are not to be accountable or responsible the one for the other, or for the acts, doings, or defaults of the other. And as the said Walter has, upon my solicitation, consented to accept the trust, I further request and direct, that no bond be required of him for the faithful discharge of the trust. And I further order and direct that such compensation be allowed to the trustees who shall execute the trust herein created, for their trouble, responsibility and services as my executors shall think reasonable, and in case of their death or disagreement, as the judge of probate for the county where this will shall be proved, shall allow and declare to be just and reasonable.

"Thirteenth. I hereby give, devise, and grant to the said Walter, and any other trustee and trustees he may appoint, pursuant to the power herein given him, full power and authority to sell and convey any part or parcel of the real estate devised to him in trust as aforesaid, except my two farms situate easterly of Easton's beach, in Middletown, in the state of Rhode Island, and my farm situate westwardly of Easton's beach and Pond in Newport, in said Rhode Island, to hold to the purchaser in fee-simple discharged of said trust, or to exchange the same for other real estate, when the major part of my children shall recommend and advise the same, and to invest the proceeds in other real estate, or in personal estate, as my children shall direct and advise; and in default of such direction and advice, as the said trustee or trustees shall think most for their interest, to be taken and held upon the same trusts and for the same

uses, and subject to the same limitations as the estate sold or exchanged was holden by said trustee or trustees.

"Lastly. I hereby revoke all former wills by me made, and declare this only to be my last will and testament. And I hereby appoint my said brother, Walter Channing, John Parker, Esquire, of said Boston, and the Honorable William Prescott, of said Boston, sole executors thereof."

In the year 1825, the testatrix, then a resident of the city of Boston, died, and her will was duly proved in the probate court of the county of Suffolk, and afterwards was duly registered in the probate court of the town of Newport, pursuant to the statute of the state of Rhode Island, so as to give effect to the same as a will of lands. Walter Channing, named in the will as trustee, having declined the trust, the complainant, William D. Sohier, was duly appointed trustee. The children of the testatrix, living at her decease, were the same who are mentioned in the will, viz. George, William C., Ruth, and Sarah. George died after his mother. His children and heirs at law, together with Ruth and Sarah, advised and assented to the sale of the land in question, by the trustee, to John D. Williams. William C. Gibbs, the only other surviving child of the testatrix, refused to assent to the sale. He, however, attended the auction, and bid for the land. The purchaser, Williams, declines to take the title, upon the ground that the power of sale was not duly executed, only two of the children of the testatrix having advised the sale. This question was raised by a demurrer to the bill.

CURTIS, Circuit Justice. The purchaser objects to taking the title offered by the vendor, because the latter had not power, under the will of Mrs. Gibbs, to make the sale. The thirteenth clause of her will confers the power to sell "when the major part of my children shall recommend and advise the same." This makes the recommendation and advice of a major part of her children a condition precedent to the exercise of the power. If this condition has not been complied with, it is the same as if no power of sale existed, and no title can be made. The question is, if it has been complied with. This is purely a question of the intention of the testatrix, to be deduced by construction from her will. Some very nice distinctions concerning the survivorship of powers have been taken in the ancient common law, though I apprehend that, even in those cases, the only purpose of the courts was, to arrive at the actual intention of the donor of the power. Co. Litt. 112b, 113a, 181b; Dyer, 177. And in modern times, this is clearly the object in all those cases which are not governed by statute law. Peter v. Beverly, 10 Pet. [35 U. S.] 532; [Bank of U. S. v. Beverly] 1 How. [42 U. S.] 134; Osgood v. Franklin, 2 Johns. Ch. 19; Shep. Touch. (by Preston) 526.

To determine the question raised in this case, it is therefore necessary to ascertain whether the testatrix, by the words, "the major part of my children," meant all her children living at her decease when the will speaks, or only such of her children as might be living when it should become necessary to act. The power of sale given to the trustee, and made dependent for its exercise upon the consent of a majority of the children, is merely for the purpose of reinvestment. In our country, where such great changes take place in the uses of lands during one life, prudence dictates the insertion of such a power in nearly every settlement of property. And when this testatrix was creating a trust, to continue during so many lives, and was inserting such a power, there is a probability that she intended it should not become impossible to exercise it, on the decease of only two of her children, and that the decease of only one of them should not enable one of the survivors to control the other two and the trustee, and prevent an exercise of the power. Mr. Sugden (1 Sugd. Powers, 144) lays down this rule: "As the law now stands, it seems, that where the authority is given to three or more generally, as to 'my trustees,' 'my sons,' &c., and not by their proper names, the authority will survive whilst the plural number remains." In 1 Chance, Powers, 242, 243, this position is examined, and the result arrived at is: "Upon the whole, though a court might, in aid of the probable intention, extend the doctrine of Lee v. Vincent [Cro. Eliz. 26] to the case of a power not preceded by an estate, it would, it is conceived, be unsafe in practice to act upon such a supposition." The testatrix not only uses language in this particular clause which designates a class, but she omits the word, "said." In the other parts of her will, she uses the expression, "my said children," which is strictly equivalent to naming them. Here she says only, "my children." A circumstance of no great weight, certainly, but leaving the descriptive words applicable to a class of persons generally, not designated by their names, and coming, therefore, within the rule as laid down by Mr. Sugden.

In Hewett v. Hewett, 2 Eden, 332, Lord Chancellor Northington, chiefly upon the ground of the presumed intention of the donor to have a power continue as long as the estate, held that it descended to the heirs of the surviving donee of the power. Now the presumption in this case, of the intention of the testatrix to have this power to consent continue, is certainly strong, not only for the reason above given, drawn from the expediency of such a power, but because the power itself is unlimited in point of time, and seems to have been intended to be exercised by the trustee, at any period during the existence of the trust; and yet the consent is essential to the exercise of the power. It would seem also, that when

the testatrix created a power to be exercised for the interest of her children and their issue, and required the consent of a major part of her children, she would naturally have in her mind, and expect to consent or refuse, only those living when the consent or refusal should become necessary, for no others could act; and that if she had intended to require the consent of a major part of all her children, though some of them should be then dead, she would have so declared in express terms. My conclusion is, in accordance with the rule laid down by Mr. Sugden, and in aid of the probable intention of the testatrix, that the major part of the children living when the power was to be exercised, were capable of consenting to the execution of the power, and that their advice and consent was sufficient.

But, at the same time, it must be admitted, that the question is not free from doubt, and therefore I have felt obliged to look at some other considerations connected with this case.

Where the question is, whether a title shall be forced on a purchaser, the court is bound to see that the title is not doubtful. A title may be doubtful because it depends on a doubtful question of law, not settled by any binding authority, of which different courts may take opposite views, and where those who may hereafter claim an interest in the estate will not be concluded by the decree. A purchaser should not be compelled to take a title which there can be no judicial certainty he can force another to take, under which the court cannot know he can himself hold the land, against parties not before the court, or precluded by its decree. In Wilson v. Bennett, 5 Eng. Law & Eq. 45, where the objection was that the power of sale was not sufficient, the vice-chancellor held that the point was too doubtful to force the title on the purchaser, and refused the relief; and in Macdonald v. Walker, 11 Eng. Law & Eq. 324,—where the same objection was made to the title, and the point of law was involved in conflicting decisions, it was held that the uncertainty was fatal to claim for relief. And in Wilson v. Bennett, 13 Eng. Law & Eq. 431, relief was refused on the same ground.

The question whether the children and grandchildren of the testatrix, who are all before the court, can so represent the inheritance, as to enable the court to make a decree, binding on whomsoever may succeed to it, is, therefore, of the first importance in this cause. To determine this question, I must first see what are the estates devised by this will. This does not involve much difficulty. The trustee clearly has the legal estate in fee-simple, not only because it is limited to him in fee by appropriate words, but because the due execution of his trust requires him to have it. This fee he holds until the decease of the last surviving child of the testatrix, for the purpose of collecting and paying over the rents and profits to those entitled to them; and upon the decease of such last surviving child, he holds the fee, to serve the uses declared in the will, and by force of the statute of uses or of wills, and it is immaterial which, the legal estate vests at once in the then surviving grandchildren, and in the issue of any deceased grandchild, as tenants in common. The only equitable estates created, are an estate for life in each child of the testatrix, remainder to his or her issue as tenants in common until the decease of the last surviving child of the testatrix. At that point of time, the equitable estates all terminate, and the legal estates vest as above mentioned. To ascertain whether the children and grandchildren are now capable of representing the inheritance, it is necessary to see what each grandchild's relation to the inheritance now is; and I take the children of Mr. William C. Gibbs, who is still living, because it is necessary that all should be thus capable. His children, then, if they survive him, will be entitled to the legal estate in fee, if he shall be the last surviving child of the testatrix; if not, they will be entitled to an equitable estate in the rents and profits during the life of such last survivor, and if any of them die before its termination, it goes to their issue, and continues in such issue until they shall take the legal estate. And this equitable estate for lives is now vested in his children, subject to be devested by death before the parent. There is therefore before the court, William C. Gibbs, who has an equitable estate for life, and from and after his decease, either the rents and profits of the land, or the land itself, will go to his issue; it being contingent, however, as in case of tenancies in tail, whether his children, or grandchildren, or more remote issue will first take. And there are also before the court his children, who are entitled as above mentioned. Lord Redesdale (Giffard v. Hort, 1 Schoales & L. 408) says: "It is sufficient to bring before the court the first tenant in tail in being; and if there be no tenant in tail in being, the first person entitled to the inheritance; and if no such person, then the tenant for life." The first two positions are supported by numerous authorities, which it is unnecessary to cite. Calv. Parties, 48, &c. The last, respecting the sufficiency of the tenant for life, is confirmed by Finch v. Finch, 2 Ves. Sr. 492; Gaskell v. Gaskell, 6 Sim. 643; Baring v. Nash, 1 Ves. & B. 551.

In Nodine v. Greenfield, 7 Paige, 544, there was a devise of rents, and profits, and income to the testator's wife for life, with remainder in fee to the children of his brother who should be living at the time of her death, and to the issue of such of the children as should then have died leaving issue; and the testator empowered his executors, or the survivor of them, to sell the real estate for reinvestment. It was held, that the

children of the testator's brother, living at the testator's death, took vested remainders in fee, subject to open and let in after-born children, and subject to be devested, by death before the testator's widow, and that they were necessary parties to a bill of foreclosure, and that with the tenant for life they could represent the inheritance, though their right of possession was contingent. The case at bar differs from Nodine v. Greenfield in this: that here there is a trustee interposed, who holds the legal estate. But I do not consider this material. For the grandchildren of the testatrix have the same substantial interest in the land in this case, as the children of the testator's brother had, in that case. It is true, that in the event of their parents' death, leaving some child of the testatrix, their interest will, during the life of the surviving child of the testatrix, be equitable only. But I conceive this is unimportant. A court of equity looks to the substantial interest, and not to the particular mode of enjoyment, for this purpose of representation, and if the party before the court is one, whose interest is of such a nature as to insure his giving a fair trial to the question in contestation, that is sufficient. If a tenant for life of an estate tail, to whose unborn issue the remainder is limited, can sufficiently represent the inheritance, because it is presumed he will act as well for them as himself, a fortiori can the tenants for life and the grandchildren in this case; for though the contingency may cause the latter to take only an equitable estate for a time, and may defeat altogether their possessing rights legal and equitable, yet they will be defeated only in favor of their issue, who must succeed if their parents do not. I consider, therefore, that the parties now before the court are capable of representing the inheritance, that a decree will preclude all future claims, and consequently that whatever doubt might be raised elsewhere concerning the title is unimportant. The demurrer must be overruled.

[NOTE. This cause was again before the court for further directions upon the question whether the purchaser should be compelled to pay interest on the purchase money. The court held that the defendant should be required to pay interest from the expiration of 20 days after the sale. Case No. 13,160.]