KNOTTS ET AL. *v.* STEARNS ET AL.

1. Where, upon a bill filed for that purpose in the proper court by the guardian of infants, a decree for the sale of the real property, whereof their father died seized, was obtained with the consent of his widow, no inquiry, so far as her rights are involved, can be had touching the validity of the sale, if made pursuant to the decree, and approved by the court.

2. Where the interest of the children then in being, or the enjoyment of the dower right of the widow, requires the conversion of such property into a personal fund, a child *en ventre sa mere* does not, until born, possess any estate therein which can affect the power of the court to pass a decree directing such conversion. Whatever estate devolves upon such child at his birth is an estate in the property in its then condition.

3. Under the laws of Virginia, parties in being, possessing an estate of inheritance in property, are regarded as so far representing all persons, who, being afterwards born, may have interests therein, that a decree for the sale thereof binding them will also bind the latter persons.

4. The requirement of the statute of Virgina, which, as an additional security against improvident proceedings for the sale of an infant's estate, provides that all those, who, were he then dead, would be his heirs or distributees, shall be parties, was met, in the present case, by making the mother and her other children parties.

5. The title of a purchaser at a judicial sale is not affected by an order of the court touching the investment of the purchase-money.

APPEAL from the Circuit Court of the United States for the Eastern District of Virginia.

Submitted on printed arguments by *Mr. John Johns, Jr.*, for the appellants, and by *Mr. John A. Meredith* for the appellees.

MR. JUSTICE FIELD delivered the opinion of the court.

This suit was brought to set aside a sale and conveyance of certain real estate situated in Richmond, Va., of which one Edwin Knotts died seized, made in 1865 under a decree of the Circuit Court of that city, and to compel a delivery of the property to the possession of the plaintiffs. The decree for the sale was obtained upon a bill filed for that purpose by the guardian of the infant children of the deceased, to which his widow was made a party. The property sold consisted of a house and lot, which, with a few articles of household furniture, constituted the entire estate of the deceased. The house was at the time much out of repair; so much so, that in its then condition it could not be rented; and neither the widow nor the

children had any means to repair it. Nor had they any other estate to which they could look as a source of support. The widow was entitled to dower in the property, and it was incapable of partition according to the respective rights of the parties. It was therefore manifestly for the interest of all of them that the property should be sold, and the proceeds converted into a fund which would give to them some income. The Circuit Court of Richmond was invested with jurisdiction under such circumstances, upon a proper showing of the facts, to decree a sale of the estate of the children. A law of the State expressly conferred the jurisdiction, and authorized its exercise upon a bill filed by the guardian for that purpose, if it was clearly shown, independently of admissions in the answer, that the interest of the infants would be promoted by the sale, and the court was satisfied that the rights of others would not be violated by the proceeding. Code of Virginia of 1860, c. 128. The widow consented to the decree so far as her interests were concerned; and it is only with reference to the estate of the children that any inquiry into the validity of the sale can now be had.

The greater part of the papers and entries in the suit in the Circuit Court of Richmond was destroyed by the fire which occurred on the 3d of April, 1865, — the day on which the city was occupied by the army of the United States; but their absence was in a great degree supplied by the testimony of the counsel of the guardian, under whose advice the suit was brought and conducted. That testimony, and copies of the decrees preserved, show that the proceedings were regularly taken in accordance with the provisions of the statute and the practice of the court. The bill was filed by the general guardian, and the widow and children were made parties defendants: they all appeared to the suit, the children by a special guardian *ad litem* appointed by the court. A reference was had to a commissioner to ascertain the facts required by the statute to authorize a sale. His report showed the condition of the property, and that the interest of all parties would be promoted by its sale, and that no rights of any other person would be violated thereby. The report was accepted and approved; and a decree for the sale was accordingly made, which was entered on

the 13th of March, 1863. The sale under it was had on the 5th of April following, when the testator of the defendant Stearns became the purchaser for the sum of $13,800 cash. The sale was approved, and a deed of the property ordered and executed to the purchaser.

The widow gave birth to a posthumous child in May following the death of her husband; and the validity of the decree is assailed because this unborn child was not made a party, nor its interests specifically considered, in the previous proceedings in the suit.

The decree, after ordering a sale of the property, also provided for the investment of the proceeds in bonds or stock of the Confederate States, or of any State belonging to the Confederacy, or of the city of Richmond. The proceeds were invested in bonds of the Confederacy, and the investment was approved by the court. It is now contended that the decree of sale was invalid because of the direction for the investment of the proceeds, and the subsequent approval of the investment made; the counsel of the appellants insisting that aid was thus directly given to the rebellion.

These two grounds constitute the principal objections to the decree. Neither of them, in our judgment, affects the validity of the sale.

The posthumous child did not possess, until born, any estate in the real property of which his father died seized which could affect the power of the court to convey the property into a personal fund, if the interest of the children then in being, or the enjoyment of the dower right of the widow, required such conversion. Whatever estate devolved upon him at his birth was an estate in the property in its then condition. That property had then ceased to be realty: it had become, by the sale, converted into personalty. All that was then required for the protection of his interest in it was the appointment of a guardian to take possession of his proportion; and such a proceeding was had. A guardian was appointed; and upon a supplemental bill the original decree was so far modified as to provide for the child having an equal interest in the fund obtained with the other children.

But there is another answer to the objection. Assuming that

the child, before its birth, whilst still *en ventre sa mère*, pos-sessed such a contingent interest in the property as required his representation in the suit for its sale, he was thus repre-sented, according to the law which obtains in Virginia, by the children in being at the time who were then entitled to the possession of the estate. Parties in being possessing an estate of inheritance are there regarded as so far representing all per-sons, who, being afterwards born, may have interests in the same, that a decree binding them will also bind the after-born parties. In the case of *Franklin* v. *Davis*, which is reported in the 18th of Grattan, this subject is elaborately and learnedly considered. In that case, a trust-estate, created for the benefit of a man and his wife during their joint lives and the life of the survivor of them, and of their children living at the death of the survivor, and of the descendants of such of the children as might be then dead, had been sold by a decree of the Cir-cuit Court of Richmond, rendered in a suit for that purpose brought by the surviving widow, in which the children were made parties, but in which no one appeared to protect the in-terests of any of their descendants; and the court held that the sale was valid, and that the descendants of any child dying in the lifetime of the surviving widow were bound by the decree, on the ground that the children were to be con-sidered as representing before the court any of their descend-ants who might, upon their death, become entitled under the trusts of the deed.

The statute of Virginia, as additional security against im-provident proceedings for the sale of an infant's estate, requires that all those who would be heirs or distributees of the infant, if dead, shall be made parties. This requirement was met in the case under consideration; for, upon the death of either child, the mother and other child would have been its heirs, and the distributees of its estate.

With the investment of the proceeds of the sale the pur-chaser under the decree had no concern. A purchaser at a judicial sale is not bound in any case to see to the application of the purchase-money. That is under the control of the court; and the title of the purchaser is not affected, however unwise or illegal the disposition of the money.

The case of *Horn* v. *Lockhart*, 17 Wall. 570, which is invoked by the appellants, lends no support to their pretensions. That was the case of an executor in Alabama seeking to escape an accounting and payment to legatees of proceeds of property of the estate in his hands sold previous to the war, and retained by him for years after he had been called to a final account by the Probate Court of the State, by alleging a voluntary investment of the proceeds in bonds of the Confederate government. Those bonds were issued for the express purpose of raising funds to carry on the war then waged against the United States. The investment was, therefore, held to be illegal, because it constituted a direct contribution to the resources of the Confederate government, thus giving aid and comfort to the enemies of the United States; and the character of the transaction in this respect was not deemed to have been changed by the fact that the investment was authorized by the existing legislation of the State, and was approved by the subsequent decree of its Probate Court. A voluntary proceeding in aid of a treasonable organization could not be thus freed from its original unlawfulness.

There is no analogy between that case and the one at bar. Here no action is sought to be upheld which was taken in aid of the insurrectionary government. The sale in question was not made with any reference to that government, but solely to raise a fund which would yield an income for the support of the widow and children, and was, therefore, a lawful proceeding.

The widow and the guardian were not compelled to take the bonds of the Confederate government: they were allowed the option of investing in such bonds, or bonds of any of the States of the Confederacy, or bonds of the city of Richmond. Having deliberately selected the securities of the insurrectionary government in which to place their money, it would be a strange thing if complaints could now be heard from them against the title of the purchaser of the property, who had nothing to do with the disposition of the money, on the ground that the court did not preserve them from the folly of that investment.

*Decree affirmed.*