REED et al. v. ALABAMA & G. IRON CO. et al.

(Circuit Court, N. D. Georgia. February 8, 1901.)

1. INFANTS—SALE OF REAL ESTATE—JURISDICTION OF EQUITY TO ORDER.

Under the law of Georgia, as settled by the decisions of its supreme court, a court of equity has inherent jurisdiction to order a sale of the legal estate of minors in real estate for reinvestment, where it is to the minors' interest,—at least, when grounds exist, aside from the interest of the minors, which make it proper to invoke the jurisdiction of equity in the premises; and where a court, after a full hearing in a suit to which the minors are parties, and in which they are represented by a guardian ad litem, has made a decree confirming a previous sale, under which the complainants were in possession and had paid a part of the purchase money in good faith, its decree will not be held invalid by another court after the remaining purchase money has been paid and the property duly conveyed to the purchaser thereunder, although the original sale may have been void,—such sale being good in equity as an agreement to sell, which the court had power to enforce when made in good faith.

2. SAME—INTEREST OF UNBORN REMAINDER–MAN.

Where an estate in remainder in comparatively unproductive property is vested in the children of the life tenants who shall be living at the time of their death, and there are a number of such children in being, who are minors and in need of funds for their maintenance and education, a court of equity has the inherent power, having before it the life tenants and the remainder-men in esse, with their guardian ad litem, and on a proper showing, to render a decree for the sale of the property and the reinvestment of the proceeds so as to produce an income for the children; and such decree will bind children afterwards born, provided it has made proper provision for the investment and protection of their interests in the proceeds.

In Equity. Hearing on bill and answer.

Wm. R. Leakin, Saunders & Davis, and Tompkins & Alston, for complainants.

W. C. Bunn and B. H. Hill, for defendants.

NEWMAN, District Judge. The bill and answer upon which this cause is now heard make the following case: On August 22, 1873, William Peek, of Polk county, Ga., made a deed to his granddaughter Willie E. Reed, in which he conveyed "to the said Willie E. Reed and her husband, William G. Reed, during their natural lives; at their death to her child or children, to share and share alike. Should she die leaving no child or children, then the said land to revert to the estate of the said William Peek at the death of Willie G. Reed,"— certain lands in Polk county, Ga., the undivided interest in which is the subject-matter of the present controversy. From the date of the deed until the year 1886 the lands in question were occupied by Wil-

liam G. Reed and his family as agricultural or farm lands. During the last-named year valuable deposits of iron ore were discovered on these lands, and persons desiring to mine ore thereon attempted to acquire title to the mineral interest, which said William G. Reed and Willie E. Reed desired to make. In the year 1887 William G. Reed and Willie E. Reed filed a petition in Polk superior court for the sale of the mineral interest in said land, praying that their minor children, then eight in number, to wit, Mary J. Reed, Bessie Reed, Georgia Reed, Nellie Reed, Eunice Reed, Louise Reed, Joe Reed, and Harris Reed, might be represented by a guardian ad litem appointed by the court, and suggesting the name of Charles H. Harris as guardian ad litem. In pursuance of this petition said Harris was appointed guardian ad litem for the minor children. He accepted said trust, answered the petition, and recommended the sale of the property for $12,000; concurring in the allegations made by petitioners that the sale was absolutely necessary for the support and education of the minors. On hearing the petition the Honorable John W. Maddox, judge of the superior court of Polk county, passed the following order:

"At Chambers, Polk Superior Court, August Adjourned Term, 1887.
"6th Nov. 1887.

"Dr. Charles H. Harris having in writing and under oath accepted the appointment of guardian ad litem for the minors in the petition named, and having also advised that the sale be made on the terms and conditions in his answer stated, it is therefore ordered by the court that the sale be made by said Harris on the terms in his answer stated, and that the proceeds from said sale be invested as he suggested. It is further ordered that he make to the purchasers bond for titles and take their notes for the purchase price, and after all the money is paid to him, that he then make and deliver a deed to the mineral interest in the lands described. It is further ordered that all these papers be recorded by the clerk of the superior court of Polk county on his minutes of court.          John W. Maddox, J. S. C. P. P. Co."

In pursuance of this order the mineral rights in the land in question were sold to J. K. Barton and B. F. Bigelow by William G. Reed and Willie E. Reed, and by said Harris as guardian ad litem for said minors, and a bond for title was thereupon given by the vendors to the vendees.

After the purchase of the mineral rights in said land by J. K. Barton and B. F. Bigelow in 1887, the said Barton and Bigelow sold an interest in the mineral rights in the land to S. E. Noble, Frank Fitch, and L. S. Colyar, the lands being subsequently conveyed by said parties to the Georgia & Alabama Consolidated Mining Company; and this company in the year 1890 sold the same to the Augusta Mining & Investment Company. After the mineral rights in question had been conveyed to the Augusta Mining & Investment Company there was some dissatisfaction on the part of that company with the legal proceedings for the sale of the same in 1887, and because since the sale two other children had been born to said William G. Reed and his wife, Willie E. Reed, a bill was filed by the Augusta Mining & Investment Company and their vendors against said William G. Reed and his wife, Willie E. Reed, and all their children in esse, and Charles H. Harris, guardian ad litem for said minor children, for the purpose

of having the legal proceedings above referred to, and the sale which had been made thereunder, confirmed, the bill being filed to the February term, 1891, of Polk superior court, in which petition or bill the former legal proceedings were set out in full, and in which suit it was averred that the property, in so far as the mineral rights were concerned, had been sold for $13,500, in pursuance of the decree passed in said case. It was further set out in the bill that, since said legal proceedings in 1887 were had, two more children had been born to said William G. and Willie E. Reed, to wit, Estelle Jones Reed and Charles Harris Reed, and asked that Charles H. Harris, guardian ad litem for the other minor children, might also be appointed by the court guardian ad litem for said two minors, which appointment was made; and said Harris accepted the trust and answered the bill, admitting all the facts as therein alleged, and asking in behalf of said minors that the sale be confirmed and ratified, and also asking that the surface rights as prayed for be also sold, and the proceeds used for the support, maintenance, and education of said minors. W. G. and Willie E. Reed joined in said answer, admitting the facts as set forth in the bill, and asked that the sale theretofore made be confirmed in all respects, and that the surface rights be also conveyed. All parties defendant to the bill were personally served, and consented in writing that the case be heard at the first term, and thereupon the case was heard at the first term, to wit, the February term, 1891, and submitted to a jury by the Honorable Thomas W. Milner, judge of the superior court of the Cherokee circuit, presiding. Upon hearing the case the jury found the following verdict:

"Upon hearing the pleadings in this case read, and the testimony of witnesses duly sworn and examined before us, we, the jury, find and decree for the plaintiff as follows: The allegations set out in the petitions and answers are true. That the sale of said property sought to be confirmed, to wit, all the interest of William G. Reed, Willie E. Reed, his wife, and all their children, in and to all the mineral and iron ore on and in lots of land numbers 586, 587, 639, 638, and half of lots 659 and 658, and ten acres of lot 657, being that part of 659, 658, and 657 west of a line commencing at a point in the center of the boundary line of 659, and running north of the Carden estate, in Second district and fourth section Polk Co., Ga., and is absolutely necessary for the support, education, maintenance, and best interest of all said children, and that the purchase price thereof, to wit, the sum of twelve thousand dollars ($12,000), was full, adequate, and sufficient therefor. We further find and decree that it was the intent of the proceedings and sale sought to be confirmed that such proceedings and sale should convey all of the mineral and iron-ore interest of said William G. Reed and Willie E. Reed, and of their children then in being, in and to said property, and should convey and forever bar all such interest in said property, and all such interest in said property of children thereafter to be born to the said William G. and Willie E. Reed. We further find and decree that the said proceedings and sale be, and the same are hereby, ratified and confirmed, and that the same did convey all of the said interest of said William G. and Willie E. Reed, his wife, and of their children then in being, in and to all of said property, and does convey and forever bar all such interest in said property of children thereafter to be born to the said William G. and Willie E. Reed. We further find that, since the commencement of said proceedings herein sought to be confirmed, two children, viz. Harris and Estelle Reed, have been born to the said William G. and Willie E. Reed, and that in the course of nature other children may be born to them, and that in view of this fact and possibility,

and for the protection of all the children of said William G. and Willie E. Reed now in being and those that may hereafter be born, except Mary J. Braelsford, whom we find has been fully settled with for her interest in said property, we decree that the terms of payment of the balance of said purchase money yet remain unpaid, to wit, the sum of eight thousand three hundred and fifty dollars ($8,350), be modified and become and be as follows: That out of said unpaid purchase money the sum of six hundred dollars ($600) be paid to each of said children, except Mary J. Braelsford, who shall reach his or her majority, on reaching such majority, before the said Willie E. reaches the age of fifty years, or before the death of said William G. Reed and Willie E. Reed; all of said purchase money remaining unpaid at such age of Willie E. Reed, or death of William G. Reed and Willie E. Reed, to become then due and payable; all unpaid interest on all such purchase price remaining unpaid to be paid semiannually from the date of the original sale, at the rate of 8% per annum, to Charles H. Harris, as guardian ad litem for said children. We further find and decree that the administration of his trust of the said Charles H. Harris as guardian ad litem under his original appointment be, and the same is hereby, approved and confirmed. We further find and decree that a new bond for title and notes in keeping with the terms of this decree be executed and delivered; the bond being delivered to the purchasers by the said William G. and Willie E. Reed, and Charles H. Harris, guardian ad litem as aforesaid; the notes to be delivered to Charles H. Harris, guardian ad litem, and to be guarantied by the new purchaser, the Augusta Mining & Investment Company. And we further find and decree that the purchasers of said property are paid upon such purchase price the sum of three thousand six hundred and fifty dollars, of which amount the sum of two thousand dollars was applied in payment of the interest in said property of said Mary J. Braelsford, and the balance of such amount was properly applied to the care, support, and maintenance and education of the minor children of the said William G. and Willie E. Reed. And we further find and decree that the interest on all amounts of the purchase price remaining unpaid until the same becomes payable in full under the terms of this decree will necessarily be required for the support, maintenance, and education of said minor children, and we further decree that such interest shall be paid to such guardian ad litem for such purpose. And we further find and decree that said Mary J. Braelsford has no further interest in said mineral and iron ore property, or the fee of the lands, but that her interest in said iron ore and said fee as remainder-man has passed to the purchasers at the original sale and their assigns. And we further find that it is expedient for the best interests of all the beneficiaries of said deed that the remainder of the interest now held by said beneficiaries in and to the fee and surface of lots and parts of lots and land heretofore described in said decree be sold by C. H. Harris, guardian ad litem, and that he execute bond for titles thereto if he can find a purchaser therefor upon the following terms, to wit: Said interest (it being the surface interest in the property to which Bigelow and Barton now hold bond for title to the mineral interest therein) is to be sold for a sum of not less than three thousand dollars, of which sum two thousand dollars is to be paid in cash to said guardian ad litem, and the balance to be closed in one note, due on same date as the date of maturity of deferred and final payments of the mineral interest in said property; interest to be paid semiannually in the same manner and for the same purpose as the interest on the notes for the mineral interest is paid. We further find that the interest of William G. Reed and Willie E. Reed in said three thousand dollars amounts to the sum of two thousand dollars cash for their life estate, and we direct that the two thousand dollars cash so paid on said purchase price be turned over to them in extinguishment of said claim, and that upon payment of the same they execute a deed therefor and deliver possession to the purchaser. We further find that the remainder of said purchase price be paid to said guardian ad litem, to be applied to the same uses and purposes for which the fund arising from the sale of said mineral interest is held. We further find and decree that the costs of this proceeding be paid by the petitioners.

"A. G. Bullock, Foreman."

Upon which judgment was entered in the following language:

"Whereupon it is ordered, considered, adjudged and decreed by the court accordingly. March 25, 1891.

"Thomas W. Milner, J. S. C. C. C. Presiding."

Two of the parties to the present proceeding (Estelle Jones Reed and Charles Harris Reed) were parties to said proceeding in 1891 in Polk superior court, and were duly served personally, and were represented by Charles H. Harris, guardian ad litem. The third petitioner in the present proceeding (George Asper Reed) was born subsequent to said proceedings.

It further appears in this case that after the sale referred to, in 1891, the Augusta Mining & Investment Company expended a large amount of money in the development of the mining property, in building furnaces and other trade fixtures, amounting to $20,000, and, in addition to this outlay, paid, as a part of the purchase price of the land and mineral rights, the sum of $10,000 in principal and interest. In 1892 the Augusta Mining & Investment Company was placed in the hands of a receiver by the United States circuit court for the Northern district of Georgia, on a bill filed by J. W. Reinhart and others against said mining company, and under a decree of said court all of the properties of the mining company were sold on February 21, 1898, and were bought by J. W. Reinhart for the sum of $65,000; the properties so bought being located in Georgia, Alabama, and Virginia, and the property now in controversy, known as the "Reed Ore Property," being included in said lands. But the purchase of Reinhart, in so far as the Reed ore property was concerned, was made subject to the balance of the purchase money represented by the notes for $8,350 and $1,000 made to Charles H. Harris, guardian ad litem, as aforesaid. The sale of said property to Reinhart was duly confirmed by the court, and Reinhart subsequently sold the same, so far as to embrace the property in controversy, to the Alabama & Georgia Iron Company. On November 8, 1899, Reinhart paid to Charles H. Harris, guardian ad litem for the minor children, and William G. and Willie E. Reed, the full balance due on account of the purchase of said property, as represented by the notes outstanding, to wit, the sum of $7,167.26, and took from said Harris, guardian, a deed to the interest of said minors, as directed by the decree of the superior court of Polk county of March 25, 1891, and thereupon executed his deed to the Alabama & Georgia Iron Company.

The main purpose of the bill in the present case is to enjoin waste. The court first ordered that an injunction issue unless a bond for. $50,000 be given, which was subsequently modified to $10,000. The answer denies the right to any relief whatever, claiming that the Alabama & Georgia Iron Company has an absolute and fee-simple title to this land by virtue of the proceedings above recited.

We must consider the effect of the proceeding in 1887, as well as of the action had under the bill filed in 1891. The first proceeding, in 1887, being subsequent to the act of 1876 (Acts Ga. 1876, p. 103; Civ. Code Ga. § 4987), is conceded to have been invalid for the purpose of conveying the rights of the minors to the mineral interest in these lands. Nothing is shown, however, in the present case to contradict

what appeared in that proceeding, namely, that a sale of these mineral interests was necessary for the support and education of the minors, and that the proceeding was instituted in good faith and fairly conducted. The proceeding in 1891, as has been stated, was a regular bill in equity, filed in Polk superior court, which was heard at the first term, by consent, by the chancellor and a jury. The argument in this case has been directed to the sufficiency of that proceeding, and as to its effect in regard to confirming the title to this land in the defendants.

It is contended for the complainants that there was no power either inherent or statutory, in a court of equity to authorize the sale of the legal estate of minor remainder-men in land; and especially, they say, is this true of the unborn remainder-man. There has been considerable discussion of this question in the decisions by the supreme court of the state, though but a few cases, if any, really are precisely in point. Leaving aside for the moment the question of any particular rights of the unborn remainder-man, reference to a few of the decisions of the supreme court will be sufficient to show the conclusion I have reached.

In Milledge v. Bryan, 49 Ga. 397, Judge Trippe, in the course of the opinion, for the court, said this, which bears somewhat on the principal question involved here:

"The only authority that could be claimed for the power exercised by the judge was the act of 20th February, 1854. Prior to that act it was held, in Arrington v. Cherry, 10 Ga. 429, that a judge at chambers had no power to order the sale of trust property; that chancery jurisdiction was conferred upon the superior courts and not upon the judges thereof. It was never claimed in any case that the judge at chambers had power to order the sale of the legal estate of minors or of any other person. There was another mode specially pointed out by law to effect the sale of the property of minor children or of other wards, such as lunatics, etc. The general rule was by application to the court of ordinary."

Then the judge uses this significant language:

"Whenever jurisdiction was exercised by a chancery court for that purpose before the act of 1854, it was upon a regular proceeding in equity, and upon special cause shown."

In Rogers v. Pace, 75 Ga. 436, Judge Blandford, delivering the opinion of the court, says:

"The judges of the superior courts of this state can do no act in vacation, nor grant any decree, except the same be authorized by statute. A judge of the superior court may in term or vacation remove or appoint trustees. Code 1895, § 3164. He may also authorize the sale of the corpus of a trust estate in vacation. Code 1895, § 3172. But it is the corpus of a trust estate which he may direct to be sold in vacation or in chambers. Then, in the present case, under the deed of Griffin to Mrs. Pace and her children, the only trust estate created was the life estate of Mrs. Pace. This was to be held by Griffin in trust for the use and benefit of Mrs. Pace during her life, but at her death the title to the property vested absolutely in her children, who took a vested remainder in this land. There is no trust connected with their interest in the land; hence the chancellor had no jurisdiction, at chambers in vacation, to direct the sale of the land by the trustee, so as to devest their title."

The significance to be attached to the above quotation from Judge Blandford's opinion is the stress which seems to be laid all through

it on the fact that no such power existed in the judge "at chambers in vacation." The inference seems clearly to be from the judges' continued use of this expression that they believed that such power did exist in the superior court, sitting as a court of equity, on regular proceedings in term time.

Without considering several other cases which might be referred to and discussed in this connection, I come to the last case on the subject, so far as I am aware, by the supreme court of the state,— the case of Richards v. Railway Co., 106 Ga. 614, 33 S. E. 193, 45 L. R. A. 712. In this case there is such an elaborate discussion of this question in the opinion of the court by Judge Lewis, and in a dissenting opinion by Judge Simmons, and so complete a review of all the preceding decisions, that reference to any other case would be superfluous. In that case the majority of the court (five members) held that a court of equity has inherent jurisdiction to deal with, and to order a sale for reinvestment of, the legal estate of minors in real estate. There were other reasons, it is true, for supporting the conclusion reached in that particular case, but the majority opinion clearly sustains the right in a court of equity of the power mentioned. The fifth headnote (a) says this:

"In the absence of any legislative provision to the contrary, it would seem that equity has inherent jurisdiction to order a sale of the legal estate of minors for reinvestment, whenever to the minors' interest."

The headnote then continues:

"Be this as it may, the present case is distinguishable from one where the sole purpose is to sell such an estate for reinvestment," etc.

But the opinion of the court on this precise question is evidently embodied in the first part of the headnote, as will be seen from an examination of the extended opinion by Judge Lewis. This opinion, as I have stated, reviews very fully probably most of the preceding decisions of the court which would throw any light on this question. In the body of the opinion, after reviewing the authorities, the court, on this branch of the case, concludes:

"We call attention to the above authorities as a few of those in this country that do not recognize the general doctrine in England; and while there is considerable conflict, as above indicated, between those and the decisions of other courts, we think the decisions recognizing this general inherent power in a court of equity rest upon the sounder reason and the wiser policy."

The inherent power referred to, as shown by the context, is the power to deal with, and order the sale for reinvestment of, the legal estate of minors in realty. It would be unfair not to state that afterwards, in the opinion, the court uses this language:

"We do not mean to say, therefore, that there was in equity or in the judge of a superior court, of this state any inherent jurisdiction simply to sell the legal estate of a minor for the purpose of reinvestment, prior to the act of 1889, provided the application urged no equitable reason for the sale, and attempted to accomplish no more than what the court of ordinary clearly had jurisdiction over."

The act of 1889 referred to is now embodied in sections 2545 and 2546 of the Civil Code of Georgia. It provides that after certain prerequisites have been complied with, "by order, in term or vaca-

tion, of the judge of the superior court of the county of the guardian's appointment, any guardian may sell the whole or any part of the estate of their wards, for reinvestment, upon such terms and at such time and place as said judge may order." It may be remarked here that I do not treat this act of 1889 as having any effect upon the question now before the court. It is proper, however, to consider the quotation last given from the opinion in the Richards Case. The case with which the court in that decision was dealing was a proceeding prior to the passage of the act of 1889, which changed the authority to sell the estate of minors for reinvestment from the court of ordinary to the superior court. But, if we assume that the court would have held that some equitable reasons must have existed to justify resort to a court of equity for a formal decree on a bill duly filed and served, it is not difficult to find such reasons in this case. By the proceeding in 1887, which has been referred to, it had been attempted to pass the title to the mineral interest in this property to Barton and Bigelow, and it had gone into the hands of their successors in title, and the mining company had full possession and control of the property and were operating the same. They had made payments on their purchase of the mineral interest, which had gone to the support and maintenance of these minors. Admitting that what was done in 1887 was absolutely void, it was carried through, as I have before stated, in good faith by all parties at interest, and certain conditions had arisen with which it was necessary at that time to deal. The then owners of the property filed their bill, reciting the former proceeding, for the purpose of having it confirmed. Mr. and Mrs. Reed and the guardian ad litem, recognizing the entire good faith of the first proceeding, filed their answer agreeing to the confirmation of the sale, and asked that the surface right be sold, also, making, together with the mineral right, the entire fee in the property. It seems to me that a case was made by the bill and answer, and by the then situation, which absolutely required the interposition of a court of equity. If it is necessary that there should exist equitable reasons, and that the mere necessity for sale and reinvestment is not sufficient to give a court of equity jurisdiction, the situation of the parties and of the property at the time the bill of 1891 was filed in this case comes fully up to any reasonable requirement in that respect. It is urged that there can be no such thing as the confirmation of that which is absolutely void, and that, the proceeding in 1887 being wholly invalid and ineffective, the proceeding in 1891 could not breathe life and vitality into it. Even if we consider what was done in 1887 a mere agreement to sell, and an advance of certain money for the benefit of these minors for their maintenance and education, and possession acquired in good faith by the parties with whom the agreement to sell was made, it would seem to make a satisfactory case on which to come into a court of equity and ask that everybody at interest in esse be served, and, if the court should deem it advantageous for the interests of the minors, that a decree be rendered confirming the agreement to sell, and providing for the reinvestment for the benefit of the minors of such proper proportion of the proceeds of sale as the minors were entitled

to. In this case, in 1891, all the children then in being were served, and the guardian ad litem appointed in 1887 was reappointed to represent the children born after 1887. The bill was answered by the father and mother and by the guardian ad litem, a jury was impaneled, and a verdict rendered covering and disposing of the whole matter. The verdict, which I have given in full, seems to make a just and equitable provision for these minors. A decree was then entered by the court in accordance with the verdict. Where rights are vested under a decree of this sort, the courts will be slow to interfere, and will only interfere where a clear case is made. In Richards v. Railway Co., supra, it is said:

"Equity is always loath to interfere with such rights, and courts 'have gone far to protect such purchasers, even when they held under doubtful or irregular sales, or defective or incorrect judgments of courts having jurisdiction of the subject-matter.' Sharp v. Findley, 71 Ga. 657, 658; Schley v. Brown, 70 Ga. 64; McGowan v. Lufburrow, 82 Ga. 534, 9 S. E. 427."

I have no question whatever that the decree of 1891 is good, and binds the children in esse at the time it was rendered. As to George Asper Reed, the child then unborn, who is made a party to this proceeding, there is some difficulty, but even in that respect I think the decree is good. It will be seen from the verdict that it is recited therein "that in the course of nature other children may be born to them, and that in view of this fact and possibility, and for the protection of all the children of said William G. and Willie E. Reed now in being, and those that may be hereafter born," etc. Full provision is then made for the benefit of any child that may be born thereafter. It is earnestly urged by counsel for the complainants in this case that the court could not by its decree control or dispose of the interest of unborn remainder-men in this property. In Bofil v. Fisher, 3 Rich. Eq. 1, in the opinion of the court, by Dargan, Ch., a similar question is discussed in the following language:

"The appeal brings up a great and important question which was discussed, but which was left undecided in the case of Van Lew v. Parr, 2 Rich. Eq. 321. It is a matter of great surprise that a matter like this, constantly arising or likely to arise out of the daily transactions in the court of equity, should have been so long deferred. If, under the circumstances of this case, an order for sale in chancery should be insufficient to confer a valid title upon the purchaser, I apprehend the title to an inconceivable amount of property in South Carolina would be put in peril. And were there stronger reasons than do actually exist, to doubt the authority of this jurisdiction in the particular mentioned, the court would hesitate long before it would announce a judgment which would shake perhaps one-fourth of the titles in the state. The difficulty, if any exists, does not lie in the first branch of the appeal, which relates to the right of the court to sell the contingent interest of Mary J. Bofil, who is an infant child of Paul Bofil, and a party defendant, by guardian ad litem, to the bill. The right of the court to sell either the vested or contingent estates of infants, who can be and are properly made parties before it, cannot at this day be questioned. But the question is whether the court has the power, by its decree, to alienate the contingent titles of unborn remainder-men, who, from the nature of things, cannot be made parties or be represented in the proceedings before the court, or to alienate the contingent titles of persons who, though in esse, are resident in other states or in foreign lands, whose residences and even whose names are unknown. To say that the court could not, under circumstances like these, convey away the fee, would be to assert a doctrine that would render conditional limitations and

contingent remainders an intolerable evil to a growing and prosperous community. Thus to shackle estates without the power of relief unless every person having a contingent and possible interest could be brought before the court as a party complainant or defendant, according to the usual forms and ordinary practice of the court, would be to sacrifice the rights and interests of the present generation to those of posterity, and of citizens to aliens. If the whole property of the country were thus situated, it is obvious that all improvement and advance would be completely checked. And this check upon progress and improvement would be in direct proportion to the extent to which this state of things exists. The case before the court is an apt illustration. Here are valuable and unimproved lots in a thriving and prosperous town, which the life tenant cannot, with a due regard to his interest, improve, and the remainder-men cannot because their rights are contingent and may never vest. Here, also, is a suffering family who may obtain relief by the action of the court. And they are the first objects of the testator's bounty. Is there no power in the state by which the titles of estates may be unfettered from the contingent claims of unborn remainder-men, and their rights not extinguished, but transferred from the property itself to a fund arising from the sale of the property? I think there should be. I think there is."

But I think that the decisions of the supreme court of the United States support the view that there may be, in a proper case, a decree for the sale and reinvestment of the interests of unborn remainder-men, if provision be made for protecting their rights as to the proceeds of sale. Especially is this true where a class of children are being dealt with, some in esse, and a possibility of others coming into being. In Knotts v. Stearns, 91 U. S. 638, 23 L. Ed. 252, while the case decided depended somewhat upon a statute of the state of Virginia, I think the general views of the court are important in this connection. In the opinion by Mr. Justice Field it is said:

"The posthumous child did not possess, until born, any estate in the real property of which his father died seised which could affect the power of the court to convey the property into a personal fund, if the interest of the children then in being, or the enjoyment of the dower right of the widow, required such conversion. Whatever estate devolved upon him at his birth was an estate in the property in its then condition. That property had then ceased to be realty. It had become by the sale converted into personalty. All that was then required for the protection of his interest in it was the appointment of a guardian to take possession of his proportion, and such a proceeding was had. A guardian was appointed, and upon a supplemental bill the original decree was so far modified as to provide for the child having an equal interest in the fund obtained with the other children."

In McArthur v. Scott, 113 U. S. 340, 5 Sup. Ct. 652, 28 L. Ed. 1015, it appeared that the effect of a former decree construing the will of a grandfather had been to cut off his unborn grandchildren from any participation in his estate. In that case, in the opinion of the court, on page 391, 113 U. S., page 668, 5 Sup. Ct., and page 1031, 28 L. Ed., this language is used:

"The general rule in equity, in accordance with the fundamental principles of justice, is that all persons interested in the object of a suit, and whose rights will be directly affected by the decree, must be made parties to the suit. Exceptions to this rule have been admitted, from considerations of necessity or of paramount convenience, when some of the persons interested are out of the jurisdiction or not in being, or when the persons interested are too numerous to be all brought in. But in every case there must be such parties before the court as to insure a fair trial of the issue in behalf of all. The plaintiffs in the present case, being as yet unborn, could not, of course, have been made actual parties to the suit in which the decree setting aside

the will of their grandfather was rendered: and the question remaining to be considered is whether there was such a virtual representation of their interests that they are bound by the decree. This question cannot be satisfactorily or intelligibly treated without first recapitulating the facts."

The court then proceeds to give the facts, and concludes that the unborn children in that case were not bound by the decree which was the subject of attack. That the court distinguished the case before it from one where the purpose of the proceeding was simply to bring about a change of investment for unborn remainder-men will be shown by the following quotation from the opinion:

"The cases in courts of general chancery jurisdiction, cited in behalf of the defendants, are clearly distinguishable from the case before us, and naturally range themselves in several classes. Some of them were mere changes of investment, leaving undiminished the interests of all parties in the property in its new form. Such were Sohier v. Williams, 1 Curt. 479, Fed. Cas. No. 13,159; Faulkner v. Davis, 18 Grat. 651; and Knotts v. Stearns, 91 U. S. 638, 23 L. Ed. 252. To the same class belong suits of partition, which are either for a division in severalty of the lands before held in common, or else for a sale of the whole land, and a division or investment of the proceeds for the benefit of those who but for the sale would have had interests in the land. In the case of a strict partition, by division of the land itself, it is sufficient to make the present owner, or, in some cases, the tenant for life, of each share, a party, because the interest of those who come after him is not otherwise affected than by being changed from an estate in common to an estate in severalty. Wills v. Slade, 6 Ves. 498; Gaskell v. Gaskell, 6 Sim. 643; Clemens v. Clemens, 37 N. Y. 59; Calv. Parties, 60, 259."

In Georgia, so far as I am aware, there is no statute controlling this question, and there are no decisions of the supreme court decisive upon this particular point. The cases of Dean v. Cotton-Press Co., 64 Ga. 670; Ansley v. Pace, 68 Ga. 402; Schley v. Brown, 70 Ga. 64; and Brown v. Brown, 97 Ga. 531, 25 S. C. 353, 33 L. R. A. 816,—are all interesting. In this last case of Brown v. Brown, the conclusion of the headnote by the court is as follows:

"If such a proceeding was maintainable at all for the purpose stated, the grandchildren of the maker in life at the time it was filed were indispensable parties. The question as to how far a decree therein, even with such grandchildren before the court, would bind unborn grandchildren, is not now before this court for determination."

I think it may be conceded that the law is not thoroughly settled in Georgia on this question. My own opinion is that where, as in this case, a considerable number of minor children in being are in need of funds for their maintenance and education, and they have a remainder interest in unproductive property, a court of equity has the inherent power, having before it the parties holding the life estate, the minor remainder-men in esse, with a guardian ad litem, and on a proper and satisfactory showing, to render a decree for the sale of the unproductive property, and reinvestment of the proceeds so as to produce an income for the children, and that such decree will bind children afterwards born, provided the decree has made proper provision for the investment and protection of their interest. In the equity proceeding in 1891 this then unborn child was properly and fully represented by the class of which his subsequent birth made him a member. There was such a virtual representation of his interest that he is bound by the decree. McArthur v. Scott, supra. In this case the

judge of the superior court treated the minors as wards in chancery, and carefully guarded the interests of those in being, as well as of any that might be thereafter born.

The facts from which these conclusions are derived being clearly apparent from the bill and answer, it follows that complainants are not entitled to any relief, and that the bill should be dismissed. A decree may be taken accordingly.