PEARSON v. CARLTON.

SAME v. FOWLER.

An intestate died in March, 1862. In July, a bill was filed for partition of his lands, and, by order passed in September, the widow was allotted one-third of the land, and the remainder was ordered to be sold; and the sale was made in October. An infant heir, A., was not a party to the proceedings; an heir, B., who had been made a party, died in August intestate and unmarried; and a child, C., was born to the first intestate after the sale. The purchase-money was paid and became worthless before distribution. *Held*—

1. That A. was not bound by any of these proceedings, and was, therefore, here entitled to have partition of the lands purchased so as to obtain his share thereof as a distributee of the intestate, and also as a distributee of B.

2. That the allotment to the widow was not binding upon A. as a distributee of the intestate and of B.

3. That the purchaser must account to A. for his share of the rents and profits.

4. That C. was entitled to the same rights as A.

5. That there was no error in requiring the widow to pay her own costs in this action.

6. A child born alive after the death of an intestate father is one of the children left by such father, and, as such, is capable of inheriting under our statute of distributions.

7. That such child is not bound by an allotment or sale in partition made before its birth, nor is it remitted to the proceeds of a sale so made.

Before HUDSON, J., Spartanburg, April, 1881.

These were two actions commenced by James T. Pearson on March 7th, 1878; one against Elizabeth Carlton, Anna Waddill and others, distributees of James Carlton, deceased, and the other against J. M. Fowler, Sanford Brockman and others, the same defendants as in the other case, except Elizabeth Carlton. The opinion states the facts of the case.

The Circuit decree, after a statement of facts, was as follows:

In regard to the unborn infant, Anna Waddill, we feel much perplexed. She was no party to that bill, nor could she be made

such; and yet she was then heir to her father, and entitled, upon birth, to a share of the estate. It is passing strange that, in this hasty partition, the condition of the widow was not noticed, and that a living heir, James T. Pearson, was overlooked. There would be no difficulty nor hardship in the matter if the land had been allotted to the other heirs, and was still in their hands. They could be decreed to contribute to this posthumous child out of their shares until she be made equal. Even if the fund were on hand undistributed she could get her share after a re-adjustment. But the fund, though still in court, or in the hands of the commissioner, and undivided, is utterly worthless. She had no voice in the suit by which this was brought about, and should not suffer from this calamity which the other heirs are called on to bear.

We feel constrained to hold that she is still entitled to her share of her father's land, although it has, in part, passed into the hands of a *bona fide* purchaser. The same rule, of course, must apply to the plaintiff, James T. Pearson, who was then *in esse*, but not a party. But how far can these two children disturb their mother's share of land, allotted to her as and for her thirds? The widow's share is fixed, and is not varied or affected by the number of children; be the same few or many, she takes under the statute her one-third in value of the land. That one-third has been duly allotted to her, and she has been for nearly twenty years in the quiet possession thereof. We do not think that this child and grandchild can be allowed to disturb her possession, unless they can show that the allotment to her was excessive. If this can be successfully done, then out of the excess they should be allowed to take their shares respectively; and of the sum of money which she was ordered to pay for equality of partition, and which she has not paid, they must have their shares.

Of the lands purchased by J. M. Fowler, the said Anna Waddill and James T. Pearson are entitled to demand partition, and likewise an accounting for rents and profits. He is entitled to all said lands, and to the use and occupation, rents and profits thereof, except such portion of land and rents or rental as shall be ascertained to belong to these claimants. Whether he will

have any rents and profits or rental to account for will depend upon whether he has derived rents and profits from more than his share of the land, or whether he has actually used more than his share thereof. The correct rule by which he will be held to account is laid down in the case of *Jones* v. *Massey*, 14 *S. C.* 292.

Fowler (and Brockman who has bought of him) will be held to account only for the rents, issues and profits, use and rental of whatever portion of the land, over and above Fowler's share, which has actually yielded rents and profits or rental income. Against the claims of James T. Pearson and Anna Waddill to a part of this land, and the rents, issues and profits thereof, the defendants, Fowler and Brockman, are entitled to a fair and reasonable offset for the enhancement of the value of the land by reason of betterments made and erected under the honest belief that their titles were good against all the heirs-at-law of James Carlton, deceased. These offsets can be adjusted either by a separate action under the statute, or may be adjusted in this action in the partition of the land, and accounting for rents and profits. It is therefore ordered, adjudged and decreed—

1. That Mary R. Godfrey and William Godfrey, her husband; Sarah Pearson and her husband, Green L. Pearson; and Francis Wood and Thomas Wood, her husband, are entitled to no relief in this action, the said wives being bound by the original partition in 1862.

2. That a writ in partition do issue, directed to five commissioners, selected according to the practice of this court, commanding them, or a majority of them, to make partition of the lands of James Carlton, deceased, described in the pleadings as being in the possession of J. M. Fowler, (and under him, in part possessed by Sanford Brockman,) so as to allot to James T. Pearson, the plaintiff herein, and Anna Waddill, one of the defendants herein, their respective shares thereof as heirs-at-law of James Carlton, deceased, and of his son, John Carlton, deceased, and the balance to J. M. Fowler, and Sanford Brockman, who claims a part under said Fowler.

3. That the same commissioners do view the tract allotted to

D

the widow, Elizabeth Carlton, and ascertain whether the same be more than her one-third in value of the lands of James Carlton, of which he died seized, and $23.90 in excess, as was reported by the commissioners in partition in 1862. That they, in making this estimate, have reference to the value of said lands in 1862, at the date of the division, and make due return of their action in the premises to the next term of this court.

4. That Elizabeth Carlton do pay the said $23.90 and interest into this court, and, that when paid in, the said J. T. Pearson and Anna Waddill do receive their respective shares of the same.

5. That it be referred to C. P. Wofford, Esq., to take an account of the rents, issues and profits, or rentals of the lands in the possession of J. M. Fowler and Sanford Brockman, according to the principles of this decree; and also of the betterments and improvements made and erected thereon by the said Fowler and Brockman, and that he do adjust and balance the accounts and offsets, and make report of his actings in the premises, with leave to report special matter.

It is further ordered that the parties herein do pay their own costs, respectively.

Exceptions were filed to this decree and appeal taken to this court.

*Messrs. Bobo & Carlisle*, for appellants.

*Messrs. J. S. R. Thomson, R. K. Carson*, contra.

August 8th, 1882. The opinion of the court was delivered by

MR. JUSTICE McIVER. James Carlton died intestate in March, 1862, and in July, 1862, a bill was filed in the Court of Equity by certain of his heirs, alleging that the personal estate in the hands of the administrator was sufficient for the payment of his debts, and praying for partition of his real estate. The administrator answered, saying that he had assets sufficient for the payment of the debts, and consenting to the partition. To this bill the plaintiff, who was then an infant of tender years, and the only child of a deceased daughter of the intestate, was not made a

party.   John Carlton, a son of the intestate, who was a party to the bill, died intestate in August, 1862, leaving, as his heirs-at-law, the other parties to the bill and the plaintiff, James T. Pearson, as well as the defendant, Anna Waddill, who also claims to be one of his heirs.

No notice was taken of the death of John Carlton in the proceedings then pending for partition, and on September 6th, 1862, an order for a writ of partition to issue was made.   In pursuance of this order the writ was issued, to which the commissioners made a return, allotting a tract of land to the defendant, Elizabeth Carlton, the widow of the intestate, as her one-third of the real estate, which, exceeding in value her share by the sum of $23.90, she was directed to pay that amount (to the other heirs, we presume, though it is not stated to whom,) for the purpose of equalizing the partition.   The remainder of the land was recommended to be sold, and, accordingly, on the same day, to wit, September 6th, 1862, an order for the sale was made, and in pursuance of this order the balance of the land was sold on October 6th, 1862.   At this sale the defendant, Fowler, became the purchaser, complied with the terms of sale, took titles, went into possession, and, subsequently, conveyed a portion of the land to his co-defendant, Brockman.   Three days after this sale the widow of the intestate gave birth to a child, the defendant, Anna Waddill, who claims, as a posthumous child of the intestate, to be one of his heirs, and, as such, entitled to a share of his estate.

These actions were brought by the plaintiff; one for the purpose of obtaining his portion of the tract of land allotted to the widow, and the other for his portion of the land bought by the defendant, Fowler, at the sale for partition, and for rents and profits.   The defendant, Anna Waddill, in her answer, sets up a claim for her share in the said lands as one of the heirs of the intestate.   The Circuit judge held that, so far as the land allotted to the widow was concerned, she could not be disturbed in the possession of it, unless, upon an inquiry which he directed, it should be ascertained that it exceeded in value her share of the estate, in which event, the plaintiff and the defendant, Anna Waddill, would be entitled to their shares of such excess, as well as to

their shares of the amount which the widow was directed to pay
for the purpose of equalizing the partition. He also held that
these parties were entitled to their shares of the land bought by
defendant, Fowler, at the sale for partition, and now claimed by
him and his co-defendant, Brockman; and that these defendants
should account for the rents and profits of so much of the land
over and above their share as actually yielded rents and profits,
subject to a deduction for improvements made by them. It was
also adjudged that the plaintiff and the defendant, Anna Wad-
dill, were also entitled to their shares of the share of John
Carlton, who died pending the proceeding for partition. Finally,
it was decreed that the parties herein pay their own costs
respectively.

From this judgment the defendants, Fowler, Brockman and
Mrs. Carlton, appeal on the following grounds: Because the
Circuit judge erred—1. In refusing to dismiss the complaint
in the case first above stated. 2. In requiring the defendant,
Elizabeth Carlton, to pay her own costs. 3. In requiring a
re-assessment of the land assigned to said defendant, Elizabeth
Carlton, as her distributive share of the real estate of her
deceased husband. 4. In holding that the plaintiff and Anna
Waddill were entitled to any share in the premises so assigned.
5. In holding that the defendants, J. M. Fowler and Sanford
Brockman, should account for the rents and profits of the land
purchased by the said Fowler at the partition sale of the real
estate of James Carlton, deceased. 6. In holding that the
defendant, Anna Waddill, is entitled to any share in the land
purchased by the said Fowler as aforesaid. 7. In holding that
the defendants, J. M. Fowler, Sanford Brockman and Elizabeth
Carlton, were bound to account to the plaintiff and Anna Wad-
dill for the interest of the latter in the share of John Carlton,
deceased, in said premises. 8. In holding that the premises
described in the complaint were subject to partition.

We propose, first, to consider the claims of the plaintiff. We
do not see how it can be questioned that he has a right to have
partition of the lands in question. He was confessedly one of
the heirs of the intestate, James Carlton, and he was not made a
party to the proceedings for partition—was an infant at the time,

and has only recently attained the age of twenty-one years. He was, therefore, not bound by those proceedings, and his rights stand as if no such proceedings had ever been instituted; for if there is anything settled, it is that judgments bind only the parties to the proceedings in which they are obtained and their privies. Indeed, it does not seem to be seriously denied that he has a right to demand partition of the land purchased by the defendant, Fowler, and to have his share thereof set apart to him.

It is contended, however, that inasmuch as the share of the widow would have been one-third anyhow, no matter what may have been the number of the children, and inasmuch as only one-third of the real estate was allotted to her, that the plaintiff has no cause of complaint against her, as that amount would have been allotted to her even if the plaintiff had been a party to the proceedings for partition. But it must be remembered that persons interested in the subject-matter of litigation are required to be made parties for the purpose of enabling them to be heard at every step taken therein, and as this plaintiff has not yet had an opportunity of being heard as to the propriety of the partition which has been made, he still has that right. It may be that, through collusion, mistake or negligence of the other parties, the land allotted to the widow exceeded her share, or that the partition was open to objection upon some other ground,· and the plaintiff undoubtedly has a right to have the whole matter inquired into; and most unquestionably he has a right to demand from the widow his portion of the amount which she was directed to pay for the purpose of equalizing the partition. This being so, it follows, necessarily, that there was no error in requiring the defendant, Elizabeth Carlton, to pay her own costs; on the contrary, the provision of the Circuit decree, in that respect, is, perhaps, more favorable to her than she would have had a right to demand.

The next inquiry is, whether there was any error in requiring the defendants, Fowler and Brockman, to account for rents and profits. Although there seems to be some conflict of decision elsewhere as to the liability of one tenant in common to account to his co-tenants for rents and profits of the premises held in

common, yet, in this State, the rule is too well settled to admit of controversy, that, when one tenant in common occupies and uses more than his share of the common property, he is liable to account to his co-tenant for the rents and profits of so much of the common property as he has occupied and used in excess of his share. *Scaife* v. *Thomson,* 15 *S. C.* 338, and the authorities therein cited. The plaintiff, never having been divested of the title to his share in the land bought by Fowler at the sale for partition, was, unquestionably, tenant in common, and, as such, entitled to an account for rents and profits as directed by the Circuit judge.

Next, as to the plaintiff's claim for his portion of the share of his deceased uncle, John Carlton, in the intestate's estate. John Carlton was originally one of the parties to the proceeding for partition, and had he lived until the decree for partition and sale thereunder was made, his interest would undoubtedly have passed to the purchaser at such sale. But, pending that proceeding, and before any decree for partition, he died intestate, leaving the plaintiff, who was not a party to such proceeding, as one of his heirs-at-law, and no notice whatever was taken of his death in the further conduct of that case. Of course, when John Carlton died intestate, his interest in the real estate of his deceased father at once descended to and became vested in his heirs-at-law, of whom the plaintiff was one, and any subsequent sale of the estate, under a proceeding to which the plaintiff was not a party, could no more divest the interest of the plaintiff in the share of his deceased uncle than it could divest his interest in the estate of his grandfather. It is clear, therefore, that the plaintiff was entitled to claim, not only his share as one of the heirs of his deceased grandfather, but also his share as one of the heirs of his deceased uncle, John Carlton; and there was no error in the judgment below in this respect.

Finally we are to consider what is the only real question in the case, the claim of the defendant, Anna Waddill, the posthumous child of the intestate. Under a rule which was rigidly observed by some of the former chancellors of this State, this question could never have arisen; for, according to that rule, a bill for partition of the real estate of an intestate would not

have been entertained until after the lapse of twelve months from the death of such intestate. If this wholesome rule had been observed when the application was made for the partition of this estate, the parties would, probably, have been saved the expense of this litigation. But although this was a rule governing the practice of some, at least, of the former chancellors, on circuit, yet it was not based upon any statutory provision like that forbidding the distribution of the personal estate of an intestate "till after one year be fully expired after the intestate's death," (2 *Stat* 524; *Gen. Stat.* 455,) nor did it have the sanction of any decision of a court of last resort, so far as we know. We cannot, therefore, undertake to say that the failure to observe this salutary rule invalidated the partition now under consideration.

The question, therefore, of the right of a posthumous child to inherit from his deceased father, is, so far as we are informed, for the first time distinctly presented for decision in this State. The rule, elsewhere, seems to be well settled, that a posthumous child inherits from his deceased father just as if he had been born in the lifetime of such father, and had survived him. In 4 *Kent Com.* 412, it is said : " Posthumous children inherit, in all cases, in like manner as if they were born in the lifetime of the intestate and had survived him. This is the universal rule in this country. It is equally the acknowledged principle in the English law; and for all the beneficial purposes of heirship, a child in *ventre sa mere* is considered as absolutely born." So in 3 *Washb. Real Prop.*, bk. 3, ch. I., § 2, *p.* 16, it is said : " Posthumous children inherit in the same manner as if they had been born in the lifetime of their father, and were surviving heirs; and this doctrine is universally adopted in the United States. And this relates back to the conception of the child, if it is born alive."

In *Wallis* v. *Hodson*, 2 *Atk.* 115, the intestate died in December, 1724, " and, at his death, left issue, Towers Wallis, his only child, an infant, who died within a week after his death, and the defendant, Elizabeth, his widow, *enceinte* with the plaintiff, who was born on May 22d following; " and the question was whether the posthumous child could take any portion of the

deceased son's estate. *Held*, that she could; Lord Hardwick saying : "The principal reason I go upon in the question is, that the plaintiff was in *ventre sa mère* at the time of her brother's death, and, consequently, a person *in rerum natura*, so that both by the rules of the common and civil law, she was, to all intents and purposes, a child, as much as if born in the father's lifetime." In *Lancashire* v. *Lancashire*, 5 *T. R.* 49, John Lancashire, being unmarried, made his will, and, subsequently, married and died; leaving his wife pregnant, who, subsequently, gave birth to a child, and the question was whether this operated as a revocation of the will. The general proposition that marriage and the birth of issue would operate as a revocation being conceded, the only question considered was, "whether a posthumous child is considered in the same situation as one born during the parent's life, and the conclusion reached was that there was no distinction. See, also, *Thellusson* v. *Woodford*, 4 *Ves.* 322.

An argument in support of a contrary view has been suggested, drawn from the word "leave" in our statute of distributions, and it has been contended that as our statute provides only for those whom the intestate *leaves* at his death, an unborn child of the intestate cannot be said to be one of those *left* by him at his death, and, consequently, cannot inherit under the statute. If, however, as we have seen, there is no distinction, in law, between a posthumous child and one born during the father's lifetime, so far as the right to inherit is concerned, this argument loses its force. But, in addition to this, it has been repeatedly decided that a devise to the children of one "living at his death" embraces a posthumous child. *Clarke* v. *Blake*, 2 *Ves. Jr.* 673, and the cases therein cited; *Jenkins* v. *Freyer*, 4 *Paige* 52; *Steadfast* v. *Nicoll*, 3 *Johns.* (*N. Y.*) *Cas.* 18.

So in *Burdet* v. *Hopegood*, 1 *P. Wm.* 486, the testator devised the premises, "in case he should leave no son at the time of his death," to the defendant, Hopegood, and died, leaving his wife pregnant, who afterwards gave birth to a son, the plaintiff, and it was held that the plaintiff was entitled to the devised premises, the contingency upon which the estate was to go over to the defendant not having happened; the testator did *leave* a son,

although he was not born at the time of his father's death.   See, also, *Bedon* v. *Bedon*, 2 *Bailey* 231, where the same view seems to have been taken as a matter of course, the question not being discussed by the court.   It seems to us, therefore, that a posthumous child, who is afterwards born alive, must be regarded as one of the children left by his deceased father, and, as such, capable of inheriting under our statute.

It may be contended, however, that though a posthumous child is an heir of his deceased father, and, as such, entitled to a portion of his estate, yet, that, as his rights do not attach until his birth, he must take his portion of the estate in the condition in which it is found at his birth; and where, as in this case, the real estate of his deceased father has, before his birth, been converted into money or bonds by a sale thereof, his claim must be confined to his share of such money or bonds, and that he cannot claim a share of the land in the hands of a purchaser.

We have found one case, which, at first view, seems to support this proposition. *Knotts* v. *Stearns*, 91 *U. S.* 638.   In that case, the action was brought to set aside the sale and conveyance of certain real estate in the city of Richmond, Virginia, of which one Edwin Knotts died seized.   The order of sale was obtained under a bill filed for that purpose by the guardian of the infant children of the deceased, to which his widow was a party.   The case made by the pleadings and evidence was, that the property sold consisted of a house and lot, which, with a few articles of household and kitchen furniture, constituted the entire estate of the intestate; that the house was much out of repair, so much so that it could not be rented, and the parties had no means to repair it, nor had they any other property from which they could derive a support; and that it was manifestly for the interest of all parties concerned that the property should be converted into funds yielding an income.   The property was sold on April 5th, 1863, the money paid and invested in Confederate bonds by order of the court, and titles were made to the purchaser.   In the month of May, following the sale, the widow gave birth to a posthumous child, and the sale was attacked because this unborn child was not a party to the proceedings, nor were its interests specifically considered in the proceedings

in that case. The court held that "the posthumous child did not possess, until born, any estate in the real property of which his father died seized, which could affect the power of the court to convert the property into a personal fund, if the interests of the children then in being or the enjoyment of the dower right of the widow required such conversion. Whatever estate devolved upon him at his birth was an estate in the property in its then condition. That property had then ceased to be realty; it had become, by the sale, converted into personalty." The court also relied upon the further ground that, under the laws of Virginia, "Parties in being, possessing an estate of inheritance, are there regarded as so far representing all persons, who, being afterwards born, may have interests in the same, that a decree binding them will also bind the after-born parties," and refers to the case of *Faulkner* v. *Davis*, 18 *Gratt.* 651; and this case, upon examination, will be found to be not in conflict with the views herein presented. No other authority is cited, and the conclusion reached by the court, upon this branch of the case, is not supported by any reasoning further than that above quoted.

This case, it will be observed, was not a case in which an order of sale for partition was in question, but, on the contrary, was a case in which the order of sale which was attacked, was made by the court for the purpose of changing an unfruitful investment of the property of persons who were not *sui juris*, into something that would yield an income necessary for the support of such persons. The sale, therefore, might, perhaps, have been sustained upon the principles established by the case of *Bofil* v. *Fisher*, 3 *Rich. Eq.* 1, in which the Court of Equity asserted its power to bar, by its decree for sale, the interest of unborn contingent remaindermen, who, of course, could not be made parties. But such a power would only be exercised when a proper case was made for its exercise—when, as in the case of *Knotts* v. *Stearns*, and in *Bofil* v. *Fisher*, it has been ascertained, by an inquiry made for that purpose, that a sale was necessary to provide for the interests of those who could be, and were, brought before the court. A proceeding for partition is a very different matter, and presents totally different questions for the consideration of the court; and if, as we have seen, the doctrine

as well settled that a posthumous child inherits in the same manner as if he had been born in the lifetime of his father and had survived him, we do not see how his interest could be divested by a proceeding for partition to which he was not a party, notwithstanding the inference that may be drawn from some of the remarks made in the case of *Knotts* v. *Stearns, supra.*

We think, therefore, that the defendant, Anna Waddill, was entitled to claim the same rights as the plaintiff has been shown to be entitled to, and that there was no error on the part of the Circuit judge in so adjudging.

The judgment of this court is that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McGOWAN, absent at the hearing.