## DeLeon *v.* BARRETT.

1. On July 11 the Circuit judge ordered that the daily sessions of the court be dispensed with, but the term not to be closed. The clerk of court thereafter opened and adjourned the court every day (Sundays excepted) until September 4, when the judge returned, held court, heard and determined this cause, and then adjourned the term *sine die.* The next succeeding term of court in this county, and the next succeeding court to be held by this judge were after this *sine die* adjournment.

*Held*, that the case was heard within the term. This case distinguished from *Ex parte Lilly*, 7 *S. C.*, 373.

2. A testator left certain property to his children and directed a division of his estate among them twenty years after his death, certain real estate devised to be accounted for by them at a valuation fixed in the will. By a codicil, the division was directed to be made at the end of ten years. All the property so given was to be held by his children during life, with contingent remainders over. At the expiration of ten years the executors sought the instruction of the court as to the proper distribution of the estate, all parties in interest, including all contingent remaindermen *in esse*, being defendants. These defendants agreed upon a proper distribution among the life-tenants and delivery of possession to them, which arrangement was approved and directed by the decree of the court, and on the appeal of some of the executors, the Circuit decree was affirmed.

3. All the contingent remaindermen *in esse* being before the court, a decree might be made putting the life-tenants into possession of their shares, to be held by them under the limitations of the will; and such decree would be binding upon contingent remaindermen thereafter born.

4. The case of *LeRoy* v. *City Council of Charleston*, 20 *S. C.*, 71, explained.

5. The executors appealing in this case should be allowed the expenses of their appeal out of the estate.

Before Hudson, J., Charleston, September, 1884.

The opinion states the case. The Circuit judge wrote at the foot of his decree, embodying the arrangement agreed upon by the parties, the following memorandum :

I have signed the foregoing decree for the following reasons : 1. Because it carries out the wishes of all the adult beneficiaries under the will of Jacob Barrett, who have propounded it to the court as a family settlement agreed upon among themselves after much consideration. It is pronounced by the executors (who have testified in the cause) to be judicious and to the best interest of all concerned. The master, after full hearing and careful examination of the whole subject, has recommended it in a very elaborate and able report. All the attorneys representing the various parties concur in pronouncing it a prudent, wise, and beneficial arrangement, if legal. In these views I fully concur and feel well satisfied, that in the decree no interest is jeopardized

or sacrificed, and that the terms of the will are in no way violated. The changes in the valuations by the testator of the real estate specifically devised are very slight, and only such as are necessary to be made in fairly and impartially equalizing these shares, and this equality the testator requested should be made.

2. Because, under the authority of *Bofil* v. *Fisher*, 3 *Rich. Eq.*, 1, and cases therein cited, it is clear that the court has the power to sell the residuary real estate in which contingent remaindermen born, and to be born, have or may have an interest—so as to bar them from ever disturbing the title of the purchasers—and in doing this, and in taking charge of the fund arising therefrom, and administering the same under the terms and limitations of the will, and in accordance with its provisions, there is no right on the part of any of these contingent remaindermen ever thereafter to question this exercise of jurisdiction, save by appeal in due time taken—nor is there the shadow of danger that the executors can ever hereafter be made to suffer for obeying the aforesaid judgment. All apprehensions in this regard are groundless and may at once be laid aside.

3. Because it is entirely unnecessary that I should comply with the request of the counsel of the executors and give interpretation to the entire will. All the issues raised in the pleadings have been adjusted by the beneficiaries, and in such a manner as fully to protect infants and all contingent remaindermen.

Such in brief are my reasons for signing the decree, and are thus partly stated because counsel of the executors preferred that such should be done. All exceptions, therefore, at variance with the terms of the decree, are overruled.

*Messrs. Simons & Seigling*, for appellants.

*Messrs. J. N. Nathans, J. B. Cohen*, contra.

March 26, 1885. The opinion of the court was delivered by

Mr. Justice McGowan. The late Jacob Barrett, of Charleston, died in November, 1871, leaving a will and codicil, of which the appellants, and one H. H. DeLeon, were the qualified executors. The testator left, surviving him, his widow, Hetty J. Bar-

rett, and children, Laura L. Levy, Sarah B. Cohen, Eugenia A. Rice, Pauline Dishon, Jacob Barrett, and Mary Beatrice Larendon. His son Isaac did not survive testator, but died before him unmarried, intestate, and without issue.

After specifically devising certain real estate in this state, and also in the states of New York and Georgia, to each of his children, to be charged against them in the final distribution of his estate at valuations fixed in the will, and directing that the executors should set apart a sum sufficient to pay an annuity of $4,000 to his widow, the principal of which, at her death, was to revert to his estate, and be distributable under the provisions of his will respecting the residue of his estate, and also directing that the further sum of $50,000 be set apart to accumulate to be disposed of by his said wife, by her will, to one or more of his children or grandchildren; the testator disposed of the rest and residue of his estate, both real and personal, to his children for life, and from and after their death to their children; providing that if any child or children should die leaving no child or children surviving him or her, or in case any child or children so left surviving should die before attaining the age of twenty-one or marriage, the property so devised to such child or children should revert to his estate; and providing further, that the child or children of either of his children, who may have died previous to the time of distribution fixed in the will, should stand in the place of such deceased parent.

The testator further directed that his residuary estate should be "kept together until twenty years after his death, and then at that time that the final division should take place, according to the tenor and meaning of his will, among his surviving children," &c., which period was changed to ten years by the codicil, in which the testator also directed as follows: "I do further direct that the portion of my estate left to all of my children, shall be subject to the following trusts, to wit: in trust to them for life, and after their death to such children as they may leave surviving; the child or children of any deceased child to take such share as his or her parent would have taken if alive, and in case there shall be no such child or children, grandchild or grandchildren, then

the same to revert to my estate, and become devisable as a part of the residue of my estate," &c.

Soon after the testator's death, Jacob Barrett, Laura L. Levy, and his other children, filed a complaint against the executors, who had qualified, the widow, Hetty J. Barrett, and all the children of testator's children who were then *in esse*, in which various questions were brought before the court, and after long litigation it was adjudged that Mrs. Laura L. Levy was entitled to two shares under testator's will, and that a certain amount of income should be annually paid by the executors for the maintenance of testator's children and grandchildren. See *Levy* v. *Williams*, 4 *S. C.*, 515, 7 *Id.*, 25, *and* 9 *Id.*, 153.

The ten years after his death fixed by the testator for "the final division of his estate" expired November 13, 1881. At that time Mrs. Sarah B. Cohen, one of the testator's daughters, had died, leaving surviving her children, Octavus Cohen, Jacob Barrett Cohen, Joseph Cohen, Abram Cohen, W. C. Cohen, and Sarah Bell Cohen. The plaintiffs, on January 9, 1882, commenced this action. But certain events having occurred after it was filed, which it was necessary to bring to the attention of the court, particularly in reference to the lands of the testator lying in the State of New York, the executors filed an amended and supplemental complaint on November 26, 1883, stating the condition of the estate, and praying for instructions from the court: "That said estate should be divided and settled, and the same paid over to such persons as are entitled to the same under the direction and order of the court, and that upon such payment and settlement, the said plaintiffs be discharged from any further accountability as executors of the same." They made defendants, by regular and proper service, all the children and grandchildren of the testator, and also the infant, Barrett Foster Cohen, a grandchild of testator's daughter, Sarah B. Cohen, thus including all the issue of the testator now in existence. The numerous defendants, many of them minors, filed answers making various and embarrassing questions.

An order of reference was made to Master Hanckel, submitting, among other things, a proposed scheme of a settlement and decree at the instance of the parties. The master took testi-

mony, heard arguments, and made an elaborate and full report, recommending a scheme for the settlement of the estate, the most striking feature of which was a recommendation that the valuations affixed by the testator in the body of the will, at the end of twenty years from the time of his death (which were excessive and arbitrary), should be equalized at the end of ten years, the time for distribution as changed by the codicil. To this report exceptions were filed, but after argument, the report was substantially affirmed and made the judgment of the court on September 5, 1884.

From this decree, the executors, George W. Williams and Charles T. Lowndes (the other qualified executor, H. H. DeLeon, not concurring), appeal to this court upon the following grounds:

I. "That the will of testator, Jacob Barrett. is changed thereby (the decree), contrary to his express intention, and new provisions substituted in place of his will and direction.

II. "That in consequence of the changes made thereby in the valuations of the property specifically devised in the will of testator at valuations fixed by his will, the amounts and values of the respective shares in the personal property in the hands of the plaintiffs are correspondingly changed. That while the parties defendant may be bound by a decree of the court, changing the valuations placed by testator on the various pieces of real estate specifically devised by his will, and the corresponding changes in the shares of the personalty consequent thereon, the parties who may be entitled to the respective shares, on the falling in of the respective life estates, cannot now be ascertained, and who they will be, and whether now in existence depends upon the contingency of the state of the respective families of the children of testator parties to this action at the time of their respective deaths, the eventuation of which contingency cannot now be foreseen. By reason of which these plaintiffs would not be protected by the decree in any payments they might make thereunder.

III. "That there is no power in the court to bind the interest and rights of contingent remaindermen not parties to the action, and that whilst the court would have the power to order property sold or converted for change of investment, so as to 'alienate the

27

contingent titles of unborn remaindermen, who, from the nature of things, cannot be made parties or be represented in the proceedings before the court,' there is no power in the court, under such circumstances, virtually to abrogate the provisions of the will by way of family settlement or otherwise, so as to bind unborn contingent remaindermen, and to direct the plaintiffs with safety to pay over the personal estate in their hands.

IV. "That the will of testator should be construed by the court and the rights of the parties and the duties of the plaintiffs ascertained by the decree of the court, in response to the prayer for judgment and complaint in the action.

V. "That the decree should not have directed the respective shares of ·testator's estate paid over to his children, defendants to this action, the codicil of testator's will specifically directing that they should be subject to the trusts therein prescribed.

VI. "That the decree proposes to adopt the recommendation of the master, and is made thereon, which recommendation is based on agreement of parties by their counsel; whereas plaintiffs claim that the matters involved in this action should be adjudicated by the court without reference to any such agreement to which plaintiffs are and were no parties, especially as parties under age are interested, and it is now impossible to foresee who will be eventually entitled to the respective shares on the falling in of the life estates.

VII. "Because no construction of the will of the testator is made by the decree, but only a scheme of family settlement is adopted; whereas it is submitted that the will of the testator should be construed and the rights of the parties and duties of the plaintiffs ascertained by the decree of the court, &c. ·

VIII. "Because the decree makes no provision for the payment of the costs and expenses of proceedings on appeal from the said decree in case the plaintiffs should deem it their duty as executors to appeal.

IX. "Because the said decree should have held that the defendant, Barrett Foster Cohen, has a contingent interest in the estate of the testator, Jacob Barrett, dependent on the state of affairs at the falling in of the respective life estates.

X. "The plaintiffs further except to the said decree because

the court had no power to hear the same for the reason : The Court of Common Pleas was regularly begun to be holden on June 25, 1884, as appears by the journal thereof. On Thursday, July 11, 1884, at the end of the proceedings for that day appears the following entry in the journal: 'By the court: Ordered, that all cases ready for trial having been disposed of, the daily sessions of the court will be dispensed with, the term of the court not being closed. Further ordered, that judgments upon all issues determined by the jury, or by the court, without the intervention of a jury, at this term, may be entered on or after the 16th July inst. (Signed) July 11, 1884, J. H. Hudson, presiding judge.' That the judge thereupon left the Circuit, and, as appears by the journal, the court was opened at 10 o'clock a. m. every day (Sundays excepted), and at 3 p. m. was adjourned to the next day (Sundays excepted), until Thursday, September 4, 1884, when the presiding judge, Hon. J. H. Hudson, returned. And the journal on that day shows that the court was opened at 10 o'clock a. m., his honor, Judge Hudson, presiding. On that day the hearing of this action was commenced, the plaintiffs not consenting to said hearing. That the court was thereupon adjourned until the next day, September 5, 1884, when the hearing was resumed, and the decree now appealed from was made. Whereupon the court was adjourned *sine die.* That by the terms of the said order of July 11, 1884, the court was in .effect adjourned *sine die,"* &c.

The last exception makes the point that the Circuit decree should be set aside, for the reason that it was not rendered in term time ; that it was *coram non judice.* The term for Charleston County began on the fourth Monday of June (18 *Stat.,* 167), and being without limit as to time, unless ended by a regular adjournment *sine die,* might continue until the next term of the court for the county, which did not begin until the first Monday of October ; or it may be that the assignment of the presiding judge to duty elsewhere would necessarily end the term. It appears that the presiding judge (Hudson) was assigned to hold the fall term of the Second Circuit, which began at Beaufort on the second Monday of September (8th). 18 *Stat.,* 462. This

cause was heard and decided in Charleston on September 5, and therefore within the term, unless that had been terminated.

The record shows that the Circuit judge certainly did not intend to end the term until September 5, when he regularly adjourned it *sine die.* It is true that on July 11, having disposed of all cases then ready for trial, and there being no necessity for him to sit in court every day, he filed an order dispensing with the daily sessions, but expressly declaring that the term of the court was not closed. The court was opened at 10 o'clock a. m. and closed at 3 p. m. every day (Sundays excepted) until Thursday, September 4, when the judge took his seat and heard this cause, rendering the decree appealed from on September 5, and then regularly adjourned the court *sine die.* It is urged, however, that the order of July had the effect of ending the term, even contrary to the intention of the judge. We cannot doubt that the Circuit judge, *proprio vigore,* may control his own sessions during the term, and we do not think that the order of July was beyond the power of the judge or had effect to terminate the term. We do not consider this case like that of *Ex parte Lilly,* 7 *S. C.,* 373. In that case the court adjourned for the term and directed the clerk to enter in the journal that the court adjourned from day to day, but without any date being fixed for its reassembling.

All the other exceptions relate to the rights of contingent remaindermen not now before the court, and the duties and liabilities of the executors in that regard. There seems general accord in the view that the Circuit decree is a proper and just settlement of the many and perplexing questions arising under the will. No one seems to doubt that it is the best possible solution of the case that can be made, and the only question is whether it can be enforced. The Circuit decree is certainly binding upon all the parties who were before the court and did not appeal. All the living descendants of the testator were before the court and are bound. No one appeals but two of the executors, and their appeal, although stated in various forms, really goes no further than to question the power of the court to make a decree which will bind unborn contingent remaindermen so as to be a perfect protection to them as executors.

If there is anything perfectly plain in the will of the testator, Jacob Barrett, it is that, after making certain specific devises to his children, and providing for the comfortable support of his widow, he desired that the residuum of his estate should be kept together in order to accumulate for a certain period after his death, and then there should be made "a final division" among his children. In this division the children were to be equalized, and in order to facilitate that he placed upon the specific devises before given particular valuations. The time fixed by the testator himself has arrived, and why should not "the final division" be now made? If from any cause it is not made, that which was manifestly the leading purpose of the testator will be defeated. Besides there are many good reasons why it should not be postponed. It is the policy of the law that estates should be settled, partitioned, and go into the hands of those entitled to them as speedily as possible, consistent with the rights of parties. We have not been able to discover anything in this will, either as to the character of the limitations or in any other respect, which should necessarily stand in the way of the "final division" directed, and the delivery of their respective shares to the children to be held under the terms of the will to them for life and then to their children.

Neither do we see any wrong or injustice in correcting the arbitrary valuations attached to the specific devises. These valuations, admitted to be erroneous and excessive, were fixed in the will proper in the view then entertained, that the time for final division would be twenty years after testator's death; but afterwards the codicil fixed the time at ten years, reducing the period of possession one-half. Construing the will and codicil together we can hardly suppose that the testator intended to make the change as to time and yet to retain unchanged the old valuations. At all events it was a proper case for a judicious "family settlement" which, where "fairly and reasonably made to prevent family disputes and family forfeitures, are upheld with a strong hand; and are binding when in cases between mere strangers the like agreements would not be enforced." 1 *Story Eq.*, § 132, and authorities.

But it is insisted by the executors that from the terms of the

limitations in the will contingent remaindermen may be hereafter
born, who, not being now before the court, will not be bound by
the decree and may at any future time come back upon them as
executors.    It is undoubtedly true that as a rule a decree or
judgment binds none but the parties before the court and their
privies, but there are circumstances in which, from the necessity
of the case, Courts of Equity act upon the property itself, and in
doing so adjudicate questions which in effect must be binding upon
those who are not *in esse*, but may come into existence.   "That
the Court of Equity has the power to sell the estates, whether
vested or contingent, of infant remaindermen who are parties
before the court is unquestionable.    The court also has the power
to bar, by its decree for sale of the property, the interests of
unborn contingent remaindermen, and of contingent remainder-
men residing abroad whose names and places of residence are
unknown and who of course cannot be made parties before the
court."    *Bofil* v. *Fisher*, 3 *Rich. Eq.*, 1; *Bouknight* v. *Brown*,
16 *S. C.*, 170 ; *Knotts* v. *Stearns*, 91 *U. S.*, 641; *Story Eq. Pl.*,
§ 120.    See the opinion of Chancellor Dunkin in *Van Lew* v.
*Parr*, 2 *Rich. Eq.*, 321, and the authorities there cited, especially
the case of *Giffard* v. *Hort*, 1 *Sch. & L.*, 408.

It will be observed that this case is not as strong as that of
*Bofil* v. *Fisher, supra*.   In that case the application was to sell
the property, conveying the fee to the purchaser for the benefit
of the first taker.    But in this case it is not proposed to sell the
property, but only to divide it among the children of the testator
and according to the positive directions of his will.    This divi-
sion does not propose "to sell or alienate the contingent titles of
unborn remaindermen," but to turn over to each child his or her
proper share to be held during his or her life subject to the pro-
visions of the will.    It neither sells nor destroys any interest, but
simply gives to the parent the share intended by the testator with
proper responsibility over to the children as remaindermen.    The
testator must be supposed to have known the limitations he was
creating, and when he directed a final division to be made at a
particular time he could not have intended that the possible con-
tingent interest of grandchildren should prevent that division

among his children; that the interests of the living children should be subordinated to that of unborn grandchildren.

It would indeed be remarkable if the anxious desire of this testator to keep the property in his family to the second generation, should result in preventing its enjoyment in severalty by the first generation, who were manifestly the primary objects of his bounty, to whom it was expressly given with the requirement that it should be finally divided among them at a time indicated. An estate ordered to be divided cannot be kept undivided for an indefinite period only for the reason that, by possibility, contingent interests in parts of it may in the remote future come into existence. As Chancellor Dargan said, in *Bofil* v. *Fisher:* "To say that the court could not, under circumstances like these, convey away the fee [not proposed here], would be to assert a doctrine that would render conditional limitations and contingent remainders an intolerable evil to a growing and prosperous community. Thus to shackle estates without the power of relief, unless every person having a contingent and possible interest could be brought before the court, as a party complainant or defendant, according to the several forms and ordinary practices of the court, would be to sacrifice the rights and interests of the present generation to those of posterity and of citizens to aliens."

We do not think that the views here stated are in conflict with the case of *LeRoy* v. *The City Council*, 20 *S. C.*, 71. In that case the contingent remaindermen were *in esse* and could have been made parties, and the chief justice. in delivering the judgment of the court, remarked that the grandchildren should have been made parties. That was obviously correct, according to the familiar equity rule, that all parties in interest should be before the court. But it will be seen that the judgment did not go upon that alone but also on the other ground, that the heirs at law of Dupont, the trustee, should have been made a party. The opinion states the ground: "We think that the grandchildren in this case, at least those whose names and residences are known, should have been made parties. We think, too, that the proceeding was defective in the fact that the heir at law of the trustee was not summoned. The fee of this land was in him during his life and at his death it descended to his heir at law. Without their

presence or the presence of a substituted trustee in whom the fee could vest it is not in court, nor has it any representative here. Nor can it, under the circumstances, be conveyed to the purchaser. The title proposed to the appellant is thus defective, wanting a material link."

We have not thought it necessary to advert to the fact, that this very estate has already been twice before this court, and that important questions, involving the rights of all the parties, were adjudicated. It was decided first that the income should be used and apportioned among the children and their families, and not be left to accumulate as directed by the will. And it was also decided that, according to a proper construction of the will, Mrs. Levy took two shares. *Barrett* v. *Levy, supra.* These questions were pressing and had to be decided, notwithstanding the unborn remaindermen were not parties. And thus it is necessary that "the final division" should be made, although these same parties *in posse* are not *in esse.*

In reference to the expenditures of executors, when they have some personal interest in judicial proceedings instituted in their representative character, the doctrine is "perplexing," as stated by Chancellor Wardlaw in the case of *McClellen* v. *Hetherington,* 10 *Rich. Eq.,* 204. In that case the rule is stated, "that the representative should be reimbursed from the estate for the expenses he has incurred in litigation, fairly falling upon him in his character of trustee, although he may have some interest in the subject. He should have credit for all expenditures for the preservation and benefit of the estate, as for fees to counsel, for general advice in the administration of the estate, * * * for obtaining the instruction of the court in a proper case for settlement of the estate and for like services." This proceeding was for the instruction of the court, and was certainly "in a proper case." The objects of the executors were probably of a mixed character, to do their whole duty as executors, and at the same time to put their own security beyond doubt. They, as representatives of all parties, had a right to do so, and whilst they might possibly have rested securely upon the Circuit decree, it was not unreasonable that they should desire the judgment of the Supreme Court upon the subject. We cannot take this case

out of the operation of the general rule.   The executors appealing should be reimbursed the expenses of the appeal.

Subject to this modification, the judgment of this court is that the judgment of the Circuit Court be affirmed.